Katz, Appellant, *v.* John Wanamaker Philadelphia, Inc.

478

Argued November 18, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

William T. Adis, with him Adis, McDermott & Suckle, for appellant.

Peter P. Liebert, III, with him John J. McDevitt, III, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, March 14, 1955:

The plaintiff, Mrs. Pauline Katz, sued John Wanamaker Philadelphia, Inc. in trespass to recover damages for injuries sustained as the result of a fall on a marble stairway in the defendant's store at 13th and Market Streets, Philadelphia. In her complaint plaintiff charged that her fall was due to defendant's negligence in permitting the stairway to remain in a "slippery, wet and slimy condition". The case was tried before a jury. At the conclusion of plaintiff's case the

defendant introduced no testimony and on its motion the trial judge directed a verdict for the defendant. Plaintiff's motion for a new trial was denied and judgment entered for the defendant from which plaintiff has taken this appeal.

The court below held that the evidence adduced by the plaintiff was insufficient to establish liability on the part of the defendant.

The testimony introduced on behalf of the plaintiff consisted of her own and that of her companion, Miss Lillian Parkman. On December 14, 1951 the two of them had left their place of employment, located about four or five blocks from the Wanamaker store, a little before 4 P.M. It had started snowing at about 1 P.M. and when they started out there were four or five inches of snow on the ground. Because it was difficult to get transportation on account of the storm, they walked to and entered the Wanamaker store on the Market Street side and proceeded through the first floor toward Chestnut Street. It was still snowing. The two women intended to do some telephoning and to make some purchases. On the 13th Street side of the first floor near Chestnut Street there is a marble stairway leading to the gallery and another marble stairway leading from the gallery to the basement. After using the telephone located partway down the first or upper stairway, the plaintiff descended to the gallery where she bought two small lamp shades and Miss Parkman continued to the basement where she bought a pair of galoshes. It was arranged that the two would meet in the basement near the restaurant which was close to the stairway. After making her purchases the plaintiff started down the stairway leading from the gallery to the basement and after proceeding three or four steps, slipped, fell and "rolled" down the stairway which was straight and contained from 20 to 25 steps.

Plaintiff testified that before descending the stairs she saw that they were wet and also saw footprints which looked muddy; that the steps "looked cleaner" on the right-hand side where there was a hand rail. She was carrying the two small lamp shades she had purchased and her coat in her left hand when she started down the steps. She testified: "Well, I got hold of the bannister and I started to walk down the stairs and I don't remember if I walked three, four steps as my foot went under me and shot out; and I had presence of mind to hold on to the railing not to fall down—and so I kept holding that railing—and what happened after that I don't know.". She was asked if she could state just what it was that caused her to fall and she answered: "Well, the only thing I can remember is that my foot shot out. How many steps I can't remember. But it shot out.". She was then asked: "Do you know what it was that caused your foot to shoot out, Mrs. Katz? Did you slip on the step or did you misjudge the step, what was it that caused your foot to shoot out? . . . A. I can only say that it was wet, that made my foot shoot out.". Plaintiff testified that when she was taken to the store dispensary she noticed that her dress was "all wet on the back and side". She testified that the steps on the stairway leading from the ground floor to the gallery were wet and muddy. When asked whether they were slippery, she said, "No, I can't say they were slippery.". When asked the same question with respect to the stairway leading from the gallery to the basement where she fell, she said, "I don't know if they were slippery.".

Miss Parkman testified that after making her purchase in the basement, she waited near the bottom of the stairway for about an hour; that she saw somebody falling down the steps whom she subsequently found to be the plaintiff. Asked as to the condition of the

steps, she said: "Well, they were very wet and a lot of mud on them. I could plainly see because I was waiting right near them. And I walked down those steps too.". The accident happened during the Christmas shopping season. The plaintiff testified that the store was crowded and Miss Parkman stated that many people used the stairs in question while she was waiting for the plaintiff.

It is a fair inference that because of the weather conditions the steps on the stairway became wet from melted snow dripping from the clothing of customers and from their shoes. Dirt would also be dragged in and deposited. While plaintiff and her companion used the words "mud" and "muddy", it is apparent that the words were not used in their most literal sense but as denoting a dirty condition. Thus the plaintiff's testimony in this respect was as follows: "Q. Was there any mud on them? A. I didn't test if it were mud. Q. That is what you said. A. But the footsteps looked like they were muddy. Q. Looked like they were muddy? A. They were dark footsteps—water. Q. Water is not mud. A. Well, as you walk there is an impression of walking, you can see it, it was clear.". From the testimony of the two women the jury could have found that there was a considerable quantity of dirt as well as water on the steps, and that the combination of the two could form a slimy and slippery condition. Plaintiff's evidence must be considered in the light most favorable to her with the benefit of every fact and reasonable inference deducible from the testimony. So considered, we cannot say that plaintiff failed to make out the existence of an unsafe or dangerous condition.

Counsel for appellee contends that all the plaintiff established was that she slipped because the step was wet and he points to her statement that "I can only say that it was wet, that made my foot shoot out.",

and cites *Burton v. Horn & Hardart Baking Co.,* 371 Pa. 60, 88 A. 2d 873, for the proposition that mere wetness will not impose liability. In the first place, this isolated statement must be considered contextually with the rest of plaintiff's testimony that the steps were wet with dirty footprints on them, although "cleaner" beside the railing where she descended. As to the *Burton* case, we regard it as inapposite. There the terrazzo steps on which the plaintiff fell were slightly wet, apparently because they had just been washed, but there was no evidence of the presence of dirt or other foreign substance on them which could have contributed in causing an unsafe footing.

The appellant also relies upon plaintiff's reiteration that she could not say the steps were slippery. A sufficient answer is that there was testimony that they were "very wet" and dirty and plaintiff's foot "shot out" from under her. The jury could infer that her foot slipped. Indeed in appellant's history of the case it is stated that plaintiff "slipped and fell". Obviously if plaintiff had testified that the steps appeared slippery to her before she used them, she might well have been charged with contributory negligence.

Appellee contends that even if it be assumed that an unsafe or dangerous condition existed, it had no actual knowledge thereof and could not be charged with constructive notice. Miss Parkman testified that during the hour she remained near the foot of the stairway there was no attempt to clean or mop up the steps. Thus the condition existed unremedied for at least an hour. What will amount to constructive notice of a defective or dangerous condition existing upon a defendant's premises, necessarily varies under the circumstances of each case and is not solely determinable by the lapse of time between the origin of the unsafe condition and the accident. Under the circumstances

here, we cannot say that the defendant did not have constructive notice.

Counsel for appellee states that as is well known, the Wanamaker store has numerous floors, aisles and stairways and in bad weather its customers are bound to continually track in water and dirt from the street, and asserts that to oblige it to keep all of its aisles and stairways dry on such days would impose so onerous a burden as to cause a complete cessation of business. We do not intend by our decision in this case to impose so heavy a burden. The proprietor of a large department store is not required to attempt the impossible. Dirty water will inevitably be tracked in during a snow storm and aisles and stairs cannot be immediately made dry and restored to normal condition. Our ruling is confined to the facts in the case before us. Here, under the evidence adduced by the plaintiff, water with accompanying dirt was tracked and accumulated upon a flight of from 20 to 25 smooth marble steps leading from the main and entrance floor. The steps were "very wet" with "a lot of mud on them". The condition which the jury could find was a slippery one, remained the same for an hour without any attempt to remedy it. The defendant was not required to mop each step after every customer's use of it, but in the exercise of the care due to a business visitor,[1] the defendant could at least have minimized the slippery condition by mopping the steps from time to time

[1] The possessor of land "... has no financial interest in the entry of a gratuitous licensee; and, therefore, such a licensee is entitled to expect nothing more than an honest disclosure of the dangers which are known to the possessor. On the other hand, the visit of a business visitor is or may be financially beneficial to the possessor. Such a visitor is entitled to expect that the possessor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions ...". See Restatement, Torts, §343, Comment a.

at reasonably frequent intervals. The defendant offered no testimony. It may be that it is prepared to contradict the plaintiff's testimony as to the condition of the steps and also to offer proof that the steps were not allowed to remain in the condition complained of. But the plaintiff's proof was sufficient to call for rebuttal by the defendant.

It is also argued that plaintiff was guilty of contributory negligence. As before stated, she testified that the steps did not appear to be slippery, and she descended where the steps appeared to be cleaner, using the hand rail for support.

We think the questions of defendant's negligence and plaintiff's contributory negligence were for the jury.

The judgment is reversed with a venire facias de novo.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

The majority opinion, it seems to me, makes a mockery of four well established legal principles—(1) a store is not an insurer; (2) plaintiff has the burden of proving that defendant had actual notice of the dangerous condition or that it existed for such a length of time that defendant had constructive notice of it, i.e., could and should have discovered and remedied it by the exercise of reasonable inspection and reasonable care: *Parker v. McCrory Stores,* 376 Pa. 122, 101 A. 2d 377; *Sheridan v. Horn & Hardart,* 366 Pa. 485, 77 A. 2d 362. See also: *Lanni v. P.R.R.,* 371 Pa. 106, 88 A. 2d 887; *Miller v. Hickey,* 368 Pa. 317, 81 A. 2d 910; *Lentz v. Allentown Bobbin Works,* 291 Pa. 526, 140 A. 541; (3) a jury is not permitted to guess, and guess, conjecture or suspicion do not take the place of or amount to proof: *Freund v. Hyman,* 377 Pa. 35, 37, 103

A. 2d 658; and (4) plaintiff has the burden of proving her case by a fair preponderance of the evidence and if her own testimony leaves in doubt how the accident happened or whether it resulted from defendant's negligence, she cannot recover.

Where the burden of proof is upon plaintiff to establish negligence or any other facts, he cannot recover if his testimony or evidence is so uncertain or inadequate or equivocal or ambiguous or contradictory as to make findings or legitimate inferences therefrom a mere conjecture: *Wagner v. Somerset Park, Inc.*, 372 Pa. 338, 341, 93 A. 2d 440; *Musleva v. Patton C. M. Co.*, 338 Pa. 249, 12 A. 2d 554; *Natvig v. P.R.T. Co.*, 293 Pa. 355, 143 A. 18; *Lithgow v. Lithgow*, 334 Pa. 262, 5 A. 2d 573; *Goater v. Klotz*, 279 Pa. 392, 124 A. 83.

Plaintiff, who was carrying a coat and two lampshades, testified on direct examination: "A. . . . I started to walk down the stairs . . ., my foot went under me and shot out; . . . . Q. . . . I asked you . . . can you tell us just what it was that caused you to fall? A. Well, *the only thing I can remember is that my foot shot out.**"* Then follows what I consider an improper suggestive and leading question: "Q. . . . Did you slip on the step or did you misjudge the step, what was it that caused your foot to shoot out?" Then the following questions and answers on cross-examination: "Q. . . . Was it slippery? . . . Q. What was your answer? They were muddy? A. They were wet. . . . Q. Was it slippery as you walked from the main floor to the gallery? A. I couldn't tell you. . . . Q. Were they [the steps] slippery? A. *No, I can't say they were slippery.* . . . Q. Were they slippery? A. *I don't know if they were slippery.* . . . A. . . . I am speaking of those stairs that I fell down. Q. What about them? A. . . . I saw they

---

* Italics throughout, ours.

were wet, there were footsteps. Q. Was there any mud on them? . . . A. But the footsteps looked like they were muddy. Q. Looked like they were muddy? A. They were dark footsteps—water."

It is clear that plaintiff's own testimony failed to prove, but on the contrary, left in a state of uncertainty, "what caused her to fall" and consequently she failed to satisfy her burden of proof that it was defendant's negligence that caused her to fall.

Furthermore, if plaintiff, whose view was unobstructed, could not see that the condition of the stairs was dangerous and could not even say that the stairs on which she fell were slippery, and could not tell whether the marble floor as she walked from the main floor to the gallery was slippery—how could defendant?

We have held that a plaintiff who slipped on steps in a restaurant that were slightly wet was properly nonsuited: *Burton v. Horn & Hardart Baking Co.*, 371 Pa. 60, 88 A. 2d 873. It is not clear just what the specific (and supposedly) dangerous condition was in the instant case, but assuming arguendo that a dangerous condition existed on the stairway, and assuming arguendo that this condition caused the plaintiff to fall, there is no evidence to prove how long such condition existed, and guess or conjecture that it—whatever it was—existed an hour cannot satisfy plaintiff's burden of proof.

For each and all of these reasons, as well as for the reasons which are more fully and forcefully set forth in *Stais v. Sears-Roebuck & Company*, 378 Pa. 289, (particularly pages 292-294), 106 A. 2d 216, and the cases cited therein, I dissent.