**Mary TRUBIN and Alfred Trubin**

v.

**PENN FRUIT CO., Inc.**

No. 15236.

United States District Court
E. D. Pennsylvania.

Sept. 8, 1956.

Louis S. Fine (of Richter, Lord & Levy), Philadelphia, Pa., for plaintiffs.

Joseph Head, Jr. (of Swartz, Campbell & Henry), Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This action, resulting from personal injuries suffered by the wife plaintiff when she fell on the pavement in front of one of defendant's stores in the City of Philadelphia, comes before the court on a motion for new trial filed by plaintiffs after the jury returned a verdict for defendant.

Evidence was introduced at the trial from which the jury could have found that the wife plaintiff was walking south on the 12 to 15 feet wide pavement in front of the store[1] on the west side of Broad Street between 4:45 and 5:30 on a late November afternoon. It had been raining hard earlier in the afternoon but was, at that time, merely drizzling and there were very few people on the pavement in front of the store. Carrying a "very small package," "she was walking in kind of a hurry, limping, like. All of a sudden she fell. After she passed the exit door." She fell when she was about 10 feet from the exit door of the store and five feet from the front of the store building. When the store manager arrived, the wife plaintiff was on her feet and stated that she did not know what caused her to fall. She and the store manager looked carefully for any articles that might be on the pavement, but the only object found was a cash register receipt, which was one inch wide and four inches long and was south of the place where the wife plaintiff fell. The pavement in front of the store where the fall took place was clean and had been swept about 10 minutes before the wife plaintiff fell.

The wife plaintiff testified that she went into the store, made some purchases, and stepped on a piece of cabbage or lettuce as she stepped out of the exit door.[2] However, the jury had to determine which version of the fall was correct and the evidence offered by defendant was ample to support the verdict for the defendant.[3]

1. *Alleged error in preventing counsel for plaintiffs from carrying out his announced plan to "open" rules of law to the jury in his closing argument.*

Counsel for plaintiffs filed with the court during the trial a six-page, unsigned document entitled "Memorandum of Law" containing 33 numbered paragraphs. At the conclusion of plaintiffs' case on liability, he described this document as a "Memorandum of Law and Suggested Points for Charge." Prior to the closing speeches, the court stated it would read three of these paragraphs to the jury; also, that the charge would cover certain enumerated paragraphs and would not cover other paragraphs (at least 10) because the language used was not appropriate for submission to the jury in view of the facts of this case. Counsel for plaintiffs began his closing argument to the jury by saying that he would first "open" the rules of law[4] and continued: "I would like to

---

1. This store was of the self-service, supermarket type.

2. The wife plaintiff's testimony that she had arranged to meet her husband at the A. & P. store (about 2 blocks away) that night provided a basis in her own testimony for doubting her story that she went in the Penn Fruit store and made purchases.

3. A store owner is not liable for the accidental fall of a pedestrian on a clean pavement in front of the store. See Franz v. Peccalaio, 1947, 356 Pa. 494, 52 A.2d 177; cf. Weschler v. Buffalo & Lake Erie Traction Co., 1928, 293 Pa. 472, 476–478, 143 A. 119; Springfield Township v. Indemnity Insurance Co., 1949, 361 Pa. 461, 463, 64 A.2d 761.

4. The plaintiffs stated (N. T. 198–9):
"There is in a matter of this sort a rule of law—now, if we were to imagine a straight compartment, and at the top a

state to you at this time that the first compartment that I am going to consider, compartment of law, is \* \* \*." The court then stated (N.T. 199):

" \* \* \* I do not want you to talk about any rules of law, because the jury might carry in their memory your statement of the law which I might not agree with, and it is my function to state the law to the jury."

[4] There was no error in this statement of the court since it is the court's function to explain the law to the jury and confusion would only result from permitting counsel to argue their views of "the rules of law" to the jury.[5] See Roberts v. Cooper, 1857, 20 How. 467, 481, 61 U.S. 467, 481, 15 L.Ed. 969. This is particularly true where, as in this case, counsel commenced to discuss the law which may be applicable to an issue not supported by the record and thus not proper for the jury's consideration. See Hockaday v. Red Line, Inc., 1949, 85 U.S.App.D.C. 1, 174 F.2d 154, 9 A.L.

R.2d 601; Palmer v. Miller, 8 Cir., 1944, 145 F.2d 926, 932.

2. *Alleged errors in charge of the court.*

■ At the conclusion of the court's charge, counsel for plaintiffs was given the opportunity to make objections to the court's instructions to the jury and only objected to the inclusion in the charge of any language concerning contributory negligence.[6] For this reason alone, plaintiffs' complaints about the charge do not constitute reversible error. See Federal Rules of Civil Procedure, rule 51, 28 U.S.C.A.

A. Plaintiffs' Point For Charge No. 2.[7]

■ ■ Even if the jury inferred from the wife plaintiff's testimony that there was a quantity of lettuce or cabbage and debris [8] outside the exit door at the time of her fall, there is no evidence in the record that this material was there for any period of time or that any material had been found on any other occasions

lid, that lid is the rule of law. Before I might be able to fill that compartment with facts, with testimony, I must first open the rule of law. The question then is how many rules of law are there; into how many separate compartments must we place the facts."

5. The plaintiffs also complain that counsel for the defendant stated his view of the law to the jury. Counsel for defendant did not begin his argument by saying that he was going to "open \* \* \* rules of law" to the jury and, for this reason, the court did not restrain him. Furthermore, counsel for plaintiffs had the opportunity to object if the law was argued to the jury by defendant's counsel, and he made no objection during the brief argument for defendant (12 pages of the notes of testimony, as opposed to the 27½ pages required to transcribe the arguments of plaintiffs' counsel).

6. The portion of the charge concerning contributory negligence was, at the most, harmless error, since the charge stated that the husband's claim would not be barred by the wife's contributory negligence and the jury returned a verdict for the defendant on the husband's claim as well as on the wife's claim making

clear that they found no liability on defendant's part. Also, paragraphs 18 and 9 to 11 of plaintiffs' document (see page 2 above) stated the "question of contributory negligence" is for the jury (N. T. 247), so that plaintiffs could not complain *after* the charge of the court that this question was not for the jury. Finally, if there was an accumulation of debris of the type mentioned in plaintiffs' argument, claiming that defendant should have known of it, the jury certainly should have considered whether it was visible to the wife plaintiff.

7. This paragraph reads (N. T. 244):
"2. The defendant is negligent even though he had no actual knowledge of this dangerous condition, if the condition remained for a period during which the defendant should have known of the condition. Katz v. John Wanamaker Phila-[delphia], Inc. [381 Pa. 477, 112 A.2d 65], supra."

8. In answer to the leading question from her counsel, "What *else* did you see" (emphasis supplied), the wife plaintiff answered: "Well, there were other pieces of things. Looked like the same thing. Looked like paper and other things, I couldn't determine what they were." (N. T. 37).

at this spot.[9] For this reason, the language in this paragraph had no possible application to the record in this case. A trial judge is not required to instruct the jury concerning a rule of law which is not applicable to the facts of the case. See Susser v. Wiley, 1944, 350 Pa. 427, 431, 39 A.2d 616.

B. Plaintiffs' Point for Charge No. 4.[10]

■ Insofar as this point goes beyond such language as the following paragraph of the charge, it has no application to the record in this case:

"If you find that the presence of refuse matter such as spinach or lettuce or papers was not a chance occurrence, but a repeated condition, then the defendant would have what we call constructive notice of the condition and would be negligent in failing to remove it, and would be liable if that was a substantial factor in causing the plaintiff to fall." (N.T. 212–3)

The facts of Markman v. Fred P. Bell Stores Co., 1926, 285 Pa. 378, 132 A. 178, 43 A.L.R. 862, are quite different from the facts presented by this record. In that case, there was evidence that the condition which caused the plaintiff to fall was one that had frequently existed prior to that time and to such a serious extent that the police had been notified about it on prior occasions.[11] Also, the case of Morris v. Atlantic & P. Tea Co., 1956, 384 Pa. 464, 121 A.2d 135, presents a situation which is far different factually than that disclosed by this record.

The language of the charge is in accordance with the Pennsylvania appellate court decisions. See Smith v. American Stores Co., 1944, 156 Pa.Super. 375, 378, 40 A.2d 696; Franz v. Peccalaio, 1947, 356 Pa. 494, 52 A.2d 177; Brannagan v. Great A. & P. Tea Co., 1945, 352 Pa. 18, 41 A.2d 869.

There is no merit, also, in the other reasons for new trial urged by plaintiffs. The trial judge does not believe that any intentional, inaccurate statement was made by defendant's witnesses. As stat-

---

9. The case of Katz v. John Wanamaker Philadelphia, Inc., 1955, 381 Pa. 477, 112 A.2d 65, relied on by plaintiffs in this connection, involves facts, as well as issues of law, which are substantially different from those in this record.

10. This paragraph reads:
"4. If the presence of lettuce and other litter was not a chance occurrence, but one which regularly arose because of the nature of the defendant's business, the defendant has a duty to be on constant guard against such a condition and his failure to do so is negligence. Markman v. [Fred P.] Bell Stores Co., 285 Pa. 378, 383 [, 132 A. 178, 43 A.L.R. 862]."

11. The court used this language in the Markman case, 285 Pa. at pages 382–383, 132 A. at page 180:
"The mere presence of such refuse, as described, does not in itself show negligence, for this condition may temporarily arise in any store of this character, though the proprietor has exercised due care; and, if it appears that proper efforts are made to keep clean the passageways so they may be safely traversed, he is not to be held responsible if some one

accidentally slips and falls. Where, however, it is disclosed, as here, that the dangerous condition, arising from the same cause, was not a mere chance occurrence, but so often repeated as to call for frequent notices to the owner, and on one occasion to the police, and the same situation was shown to have existed when the customer was hurt, we cannot say the jury was not justified in finding defendant failed in his legal duty."

In the more recent Franz case, cited supra, footnote 3, which is far more similar to the factual situation in this case as accepted by the jury, the Pennsylvania Supreme Court distinguished the Markman case, using this language, 356 Pa. at page 496, 52 A.2d at page 178:

"Appellants rely upon Markman v. Fred P. Bell Stores Co., 285 Pa. 378, 132 A. 178. That case does not control the present factual situation. There the evidence was that where the plaintiff fell was not a chance occurrence but a repeated condition so frequent that the defendant's attention was drawn to it many times and on one occasion the police department was notified of it."

ed above, the verdict was fully justified by the evidence.[12]

### Order.

Now, September 8, 1956, plaintiffs' motion for a new trial is denied.

---

12. In denying defendant's motion for dismissal of the action under Fed.Rules Civ. Proc. 41 at the conclusion of the plaintiffs' case, the court said, referring to the weakness of plaintiffs' case before defendant had offered any testimony:

"Now, on the motion under Rule 41 that the defendant has filed, I will deny the motion. But I must say to the plaintiff that I feel that his case is extremely weak, and that I am not at all sure that the law does not require me to grant the motion, but since there is a doubt in my mind, I feel the doubt should be resolved in favor of the plaintiff." (N. T. 114–5).