J-A06037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| VERONICA HONIS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GIANT FOOD STORES, INC. | |
| Appellee | No. 1245 MDA 2015 |

Appeal from the Judgment Entered August 31, 2015
In the Court of Common Pleas of Luzerne County
Civil Division at No: 9603-2012

BEFORE:  LAZARUS, STABILE, and DUBOW, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 16, 2016**

Appellant, Veronica Honis, appeals from the judgment entered on

August 31, 2015,[1] following denial of her motion to remove the nonsuit

entered in her premises liability case against Appellee, Giant Food Stores

_____

[1] Although Appellant suggests she is appealing from the trial court's July 1, 2015 order, the appeal properly lies from judgment entered on the order denying removal of the nonsuit. ***See, e.g., Harvey v. Rouse Chamberlin, Ltd.***, 901 A.2d 523, 524 n. 1 (Pa. Super. 2006).

We note that this case proceeded to trial on February 3, 2015.  At the close of Appellant's case, Giant moved for a compulsory nonsuit, which the trial court granted after hearing argument on the motion.  By order dated July 1, 2015, the trial court denied Appellant's post-trial motion seeking removal of the nonsuit.  Appellant filed a notice of appeal on July 21, 2105.  By order of this Court dated August 27, 2015, we quashed the appeal for failure to enter final judgment on the July 1 order.  By subsequent order entered September 3, this Court vacated the August 27 order and reinstated the appeal in light of Appellant's motion for reconsideration accompanied by evidence that judgment was entered on the order on August 31, 2015.

("Giant").    Appellant  argues  there  was  sufficient  evidence  for  a  jury  to

conclude Giant created a dangerous condition that caused her to fall and/or

failed  to  conduct  a  reasonable  inspection  that  would  have  discovered  the

dangerous condition.  We disagree and, therefore, affirm.

In  its  July  1,  2015  memorandum  opinion,  the  trial  court  aptly

summarized  the  evidence  Appellant  presented  in  her  case-in-chief  at  the

jury trial held on February 3, 2015.  Trial Court Opinion ("T.C.O."), 7/1/15,

at 3-6.  We adopt the trial court's summary as our own and incorporate it

herein  by  reference  in  this  Memorandum.    Briefly,  Appellant  and  her

husband testified that they went to the Giant on Locust Street in Hazelton on

June 23, 2010.  When they were in the checkout aisle, they realized they

forgot  to  get  ice  cream.    While  her  husband  was  bagging  their  groceries,

Appellant  went  to  an  end  cap  display  where  the  on-sale  ice  cream  was

located.  She returned to the checkout aisle and, as she placed the ice cream

on  the  conveyor,  she  stepped  on  a  small  bottle  of  Red  Bull  and  fell,  causing

injuries to various parts of her body.  Neither she nor her husband observed

the bottle in the aisle before Appellant fell.

As part of her case-in-chief, Appellant called a Giant service associate

to testify as on cross-examination.  The associate, who did not witness the

incident,  explained  the  "clean  sweep"  procedure  by  which  she  and  other

employees  would  survey  the  store  for  hazards.    She  explained  that  she

would  use  a  gun  to  swipe  "tags"  in  the  aisles,  indicating  the  aisle  was

- 2 -

inspected. While there were no tags in the individual checkout aisles, those aisles were inspected as part of the "front end" inspection. The employee would swipe a tag in the front end indicating the aisles and other front end areas were checked for hazards. The associate also explained that there were small refrigerators placed in front of the checkout aisles and that items were stocked in and on them. However, as the trial court observed, "[t]here was no testimony offered that the Red Bull was one of the items in the refrigerator or on display." T.C.O., 7/1/15, at 6.

Following the grant of nonsuit, Appellant filed a motion seeking removal of the nonsuit. The trial court denied the motion on July 1, 2015. Appellant filed an appeal to this Court and filed a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant presents one issue for our consideration, which fairly embodies the errors alleged in her Rule 1925(b) statement.

> A. Did the learned trial judge err in granting the motion for compulsory nonsuit of [Giant] by reason that, there existed sufficient evidence from which the jury could have reasonably concluded that [Giant] created the dangerous condition that caused [Appellant's] injuries and/or that, [Giant] failed to conduct a reasonable inspection of the premises that would have discovered the dangerous condition?

Appellant's Brief at 4.

We begin by setting forth our standard of review.

> Our standard of review is well-established: "A nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the

cause of action had been established." **Brinich v. Jencka**, 757 A.2d 388, 402 (Pa. Super. 2000), *appeal denied,* 565 Pa. 634, 771 A.2d 1276 (2001) (citation and internal quotation marks omitted). Furthermore, all conflicts in the evidence must be resolved in the plaintiff's favor. **See Gigus v. Giles & Ransome, Inc.**, 868 A.2d 459, 461 (Pa. Super. 2005), *appeal denied,* [895 A.2d 550 (Pa. 2006)]. In reviewing the evidence presented we must keep in mind that a jury may not be permitted to reach a verdict based on mere conjecture or speculation. **See Brinich**, 757 A.2d at 402. We will reverse only if the trial court abused its discretion or made an error of law. **See Weiner v. Fisher**, 871 A.2d 1283, 1285 (Pa. Super. 2005).

**Harvey v. Rouse Chamberlin, Ltd.**, 901 A.2d 523, 526 (Pa. Super. 2006).

In its memorandum opinion, the trial court examined Pennsylvania law applicable to premises liability cases and acknowledged that Pennsylvania has adopted the Restatement (Second) of Torts § 343. Section 343 (Dangerous Conditions Known to or Discoverable by Possessor) provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) Torts § 343. The trial court proceeded to examine case law applying § 343 and reviewed the trial testimony to ascertain whether Appellant presented evidence tending to prove that Giant deviated

from the duty of reasonable care under the circumstances existing in Appellant's case. The trial court also reviewed and distinguished cases upon which Appellant relied. Ultimately, the trial court determined that Appellant failed to present evidence proving that Giant deviated from its duty of reasonable care.

We find the trial court's analysis is sound and its conclusions are properly based on appropriate and relevant authority. As the trial court's analysis confirms, Appellant failed to present evidence that Giant either created a dangerous condition that caused Appellant to fall or failed to conduct a reasonable inspection of its premises. We find no abuse of discretion or error of law in the trial court's conclusion. Therefore, we shall not disturb it.

We adopt the entirety of the trial court's July 1, 2015 opinion as our own and incorporate it herein by reference as it fully set forth. In the event of further proceedings, the parties shall attach a copy of the opinion to any filings.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2016

- 5 -

Circulated 05/25/2016 02:59 PM

| Veronica Honis, | : | In the Court of Common Pleas |
|---|---|---|
| Plaintiff | : | of Luzerne County |
| vs. | : | Civil Action At Law |
| Giant Food Stores, LLC, | : | Jury Trial Demanded |
| Defendant | : | No. 2012  -  9603 |

## MEMORANDUM OPINION

On June 23, 2010 the Plaintiff, Veronica Honis, and her husband were shopping at the Defendant grocery store located at 70 South Locust Street, Hazleton, Luzerne County, Pennsylvania. On this date, as the Plaintiff entered the checkout aisle, she stepped on a can of Red Bull on the floor and fell, sustaining injuries to her lower back, right wrist and right ankle. Plaintiff filed a lawsuit against the Defendant alleging that the Defendant failed to inspect the checkout aisle in order to insure that a dangerous condition did not exist.

The parties agree that Honis was at the Giant Food Store as an invitee, and thus the following principles of law are applicable.

Pennsylvania has adopted Section 343 of the Restatement (2d) of Torts, which states:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, if, but only if, he:
>
> a. knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> b. should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> c. fails to exercise reasonable care to protect them against the danger.

2015 JUL -1 PM 3:37

FILED
PROTHONOTARY
LUZERNE COUNTY



Restatement (2d) of Torts Section 343. Our Pennsylvania Court has explained the import of this section as follows:

> The mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence. In order to recover damages in a slip and fall case such as this, the invitee must present evidence which proves that the store owner deviated in some way from his duty of reasonable care under the existing circumstances. This evidence must show that the proprietor knew, or in the exercise of reasonable care should have known, of the existence of the harmful condition. Section 343 also requires the invitee to prove either that the store owner helped to create the harmful condition, or that it had actual or constructive notice of the condition. Zito v. Merit Outlet Stores, 647 A.2d 573, 575 (Pa. Super. 1994) (internal citations and quotations mark omitted).

The principle of law from which this rule of the Restatement was derived is that a possessor of land is not an insurer of the safety of those on his premises. Martino v. Great Atl. & Pac. Tea Co., 419 Pa. at 229, 213 A.2d 608 (1965); Winkler v. Seven Springs Farm, Inc. 240 Pa. Super at 646, 359 A.2d at 442. As such the mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence. Amon v. Shemaka, 419 Pa. 314, 214 A.2d 238, 239 (1965); Calhoun v. Jersey Shore Hosp., 250 Pa. Super. 567, 571, 378 A.2d 1294 (1977); Jones v. Sanitory Mkt. Co., 185 Pa. Super. 163, 137 A.2d 859, (1958). Therefore, in order to impose liability on a possessor of land, the invitee must present other evidence which tends to prove that the possessor deviated in some particular way from his duty of reasonable care under the existing circumstances.

2

Logically, the invitees case in chief must consist of evidence which tends to prove either that the proprietor knew, or in the exercise of reasonable care ought to have known, of the existence of the harm causing condition. Martino, Supra.; Katz v. John Wanamaker, Inc., 381 Pa. 477, 482, 112 A.2d 65 (1955); Markman v. Fred P. Bell Stores Co., 285 Pa. 378, 382, 132 A. 178, 180 (1926); McMilan v. Mountain Laurel Racing, Inc. 240 Pa. Super. At 254, 367 A.2d at 1109; Winkler v. Seven Springs Farm, Inc. Supra.; Borsa v. Great Atl. & Pac. Tea Co., 207 Pa. Super. 63, 215 A.2d 289 (1965); Jones v. Sanitary Mkt. Co., Supra.

At trial, the Plaintiff, Veronica Honis testified that she completed her shopping, and when she and her husband got to the checkout, she forgot the ice cream, so she went back for it. (N.T. P 31, L 25 – P32, L2). She then stated that when she returned to the aisle with the ice cream, she went to put the ice cream on the conveyor belt, and that when she stepped, she stepped on a small sport bottle. (N.T. P 32, L13-16).    Mrs. Honis testified that she never saw the bottle before she fell. (N.T. P 33, L13-14). Mrs. Honis testified that she did not pay attention to the displays when she was entering the checkout aisle. (N.T. P60, L19-23). Mrs. Honis did not see any items on the floor when she went for the ice cream. (N.T. P 61, P 20). When Mrs. Honis left the checkout aisle there was nothing on the floor. (N.T. P 62, L4). She had no idea how long that bottle was on the floor prior to her fall. She could not testify as to how long the bottle was on the floor. (N.T. P 62, L11-16).

Robert Honis, the Plaintiff's husband, testified that he did not see the bottle until after his wife had fallen. He was already through the aisle when she fell. (N.T. P65, L17).

3

Interestingly, on cross, Mr. Honis testified as follows:

Q. (By Mr. Connolly): I believe it was your deposition --- at your deposition you testified you were checking out and you noticed the gentleman with an armful of groceries approaching your checkout aisle; is that correct?

A: Yes, sir.

Q: Okay. And at your deposition it was your opinion that this gentleman decided not to enter your checkout aisle once he saw you, correct?

A: Yes.

Q: And you believe this gentleman knocked the bottle from the display rack; is that correct?

A: I couldn't say he did and I can't say he didn't. But I was unloading the groceries – or packing the groceries as they were coming toward the end and putting them in bags, and he just walked away. So, I don't know if he saw the big order that we had or he didn't want to wait.

Q: Right.

A: That's not for me to say that's the reason he left. I don't know.

Q: Okay. But you believe that the gentleman knocked this energy bottle from the display at the end.

A: He may have. I don't know.

A: He may have. I didn't see him do that. (N.T. P 70 -71)

The questioning continued. Counsel showed the witness his deposition testimony, and the following colloquy occurred:

4

Q: Question: "Did you see or hear him answer anything?" You answered: "No." I'm sorry, the question was "Did you see or hear him drop anything?" The answer was "No."

A: No.

Q: The question then continues: "Did you see or hear him knock anything over?" Answer: "Not really, no." And then this question here: "Do you think that's when the item fell?" Answer: "I surmise that's probably when it was knocked down, to be very truthful with you." Did I read that correctly?

A: Yes, you did.

Q: From the time that gentleman left the area, it was a matter of seconds before your wife came back with the ice cream?

A: Very shortly after, yes.

Q: And you have no idea how long that item was on the floor prior to your wife --

A: I have no idea.

Q: You don't know how long the item was on the floor prior to your wife's fall, correct?

A: Correct.

The Plaintiff then offered the following testimony from Margaret Kasarda, a service associate from Giant Market. Miss Kasarda testified that she worked at the Defendant business for 15 years. She testified that the Defendant utilized a process of "clean sweeping" to check the aisles. The employer would put a name on the board at the premises each day and whoever was assigned to that duty would do a check. (N.T. P 76,

18-20). Miss Kasarda described the check as follows: "You take a gun, you put your name in it and your code, and they have little tags, and you start checking the areas and swiping the tags." She testified that she would go down the aisle and tag it so that the employer knew when she inspected the aisle. (N.T. P 77, L5-11). She stated that the Defendant did not have a tag for the check out aisle. (N.T. P 77, L17). The witness also indicated that there are tiny refrigerators placed in front of the aisles. They are waist high and all sorts of items are stocked on them. There was no testimony offered that the Red Bull was one of the items in the refrigerator or on display.

Moreover, on cross, the witness testified that it takes 35-40 minutes to do a clean sweep of the store. She specifically testified that there is a sweep of the checkout aisle. The sweep of the checkout aisle is included with the front end inspection of the store. (N.T. P. 79-80).

The Plaintiff argues that the display placed in front of the aisle was a harmful transitory condition. However, there was no testimony offered to prove that the red bull was part of a display. Moreover, the plaintiff fell as a result of a can of Red Bull. There was no evidence that this can or bottle was traceable to the possessor or his agent's acts, (that is, a condition created by the possessor or those under his authority). There was no evidence offered that the condition is one which the owner knows has frequently recurred. Likewise, if a patron dropped the can, the law provides that if the transitory condition is traceable to persons other than those for whom the owner is, strictly speaking, ordinarily accountable, the jury may not consider the owner's ultimate liability in the absence of other evidence which tends to prove that the owner had actual notice of the condition or that the condition existed for such a length of time that in the exercise of

6

reasonable care the owner should have known of it. The Plaintiff could not show that the owner had actual notice of the condition or that the condition existed for such a length of time that in the exercise of reasonable care, the owner should have known of it.

The instant case is governed under the above rules and by Martino, Supra. In Martino, the plaintiff, an invitee, brought an action against a self service store for injuries sustained when she stepped on a grape on the floor. As in the instant case, there was no evidence as to how the fruit got onto the floor, or how long it had been there prior to the fall. The Court held that because there was no proof presented as to the cause of the grapes' being on the floor, there was no evidence from which a jury might conclude that the store breached its duty in not removing it. See also Mac Donald v. Gimbel Bros., Inc. 321 Pa. 25, 183 A. 804 (1936).

In the instant case the record is void of any evidence from which the jury could have inferred either that the presence of the drink on the floor was due to an act or acts by customers which had occurred in the past and remained uncorrected, or that the harm causing act or acts likely occurred because of the manner in which the can was packaged, displayed or sold.

There was no evidence that the drink was in the refrigerator or how many were in the refrigerator or if they were over stacked, etc. There was no testimony to suggest how the Red Bull got on the ground. On the other hand, the jury heard the testimony of a store manager that there were inspections performed on a daily basis, and that as part of the inspection of the front end of the store, the checkout aisles were "checked" by the employees.

7

This case is similar to the case of Moultrey v. Great A&P Tea Co, 281 Pa. Super. 525, 422 A.2d 593 (1979), a case cited by the Plaintiff is his brief. There the court stated:

> While our research has revealed cases in other jurisdictions which have modestly expanded the grounds for liability in supermarket fall down cases, even if we were to accept their rationale, they would be unavailing for Ms. Moultrey. See generally, Note, Supermarket Liability: Problems in Proving the Slip and Fall Case in Florida, 18 U.Fla.L.Rev. 440 (1965). One line of cases permits the fact finder to infer notice of a harmful condition from proof of the prior uncorrected existence of the continuing and recurrent condition, despite the absence of proof that such condition existed for an extended period of time immediately before the particular accident. Hetzel v. Jewel, 457 F.2d 527 (7th Cir. 1977).A second line of cases allows an inference of notice from circumstances within the proprietor's knowledge sufficient to create a reasonable probability that the specific harmful condition would occur. See F. W. Woolworth Co. v. Stokes, 191 So.2d 411 (Miss. 1966); Mahoney v. J.C. Penney Co., 71 N.M. 244, 377 P.2d 633 (1962). Such circumstances will arise from the nature of the business, the general conditions of the premises, a pattern of conduct or recurring incidents. Bozza v. Vornado, Inc. 42 N.J. 355, 200 A.2d 777 (1964).

In Moultrey, Ms. Moultrey entered Defendant's store accompanied by her teenaged children, Louis and Linda, to do some food shopping. As she entered the store, she secured a shopping cart and proceeded to the produce counter. The vegetable counter was to her right and the fruit counter was to her left. As she moved into the aisle between the two counters, she observed some water and some leaves of lettuce and cabbage on the floor. She maneuvered her cart to avoid the water in order to get to the banana stand, intending to purchase some bananas. She pushed the cart to the left side of the aisle close to the banana stand and circled the cart to obtain the bananas. After picking them up, she ventured back toward her cart, slipped and fell to the floor. While on the floor, she looked back and saw one squashed cherry, the seed of which was on her shoe. The cherry was not in the water, but rather was in a dry area closer to the cart.

8

The court held:

> Accordingly, the Restatement 2d. ss 343 and 344 and our cases support the proposition that the invitee must prove either that the proprietor had a hand in creating the harmful condition, or that he had actual or constructive notice of such condition. Since such proof was absent, the appellee's motion for a compulsory nonsuit was granted.

In the instant case, there was not any evidence offered from which the jury could infer that the can of Red Bull on the floor was a recurring and uncorrected condition, arising from the shopper's mishandling the bottle and the store's inadequate efforts to clean the floor. Additionally, there was no evidence offered as to how the can was displayed, whether this method of display had led to the can's falling to the floor in the past, and whether the store had adopted any measures to prevent accidents of this type.

Plaintiff relies upon a portion of the Restatement, wherein Pennsylvania Courts have uniformly held that if the harmful transitory condition is traceable to the possessor or his agent's acts, (that is, a condition created by the possessor or those under his authority), then the plaintiff need not prove any notice in order to hold the possessor accountable for the resulting harm. See Penn v. Isaly Dairy Co., 413 Pa. 548, 198 A.2d 322 (1964); Finney v. G.C. Murphy Co., 406 Pa. 555, 178 A.2d 719 (1962). In a related context, where the condition is one which the owner knows has frequently recurred, the jury may properly find that the owner had actual notice of this condition, thereby obviating additional proof by the invitee that the owner had constructive notice of it. See, Borsa v. Great Atl. & Pac. Tea Co., Supra.; Clark v. Glosser Bros. Dept. Stores, 156 Pa. Super. 193, 39 A.2d 733 (1944).

9

The case cited by the Plaintiff as most illustrative is the 2014 case from Monroe County, 31 D&C 5th 487, <u>Signoule v. Fernwood</u> 426 4108 Court of Common Pleas of Monroe County on a Motion for Summary Judgment and is not precedential. The plaintiff cites this case mistakenly as a Commonwealth Court case. This case involved a rusty screw on the floor for an unknown length of time. In <u>Signoule</u> there were two witnesses who testified the screw came from a nearby sauna door. In other words, the witesses identified an area from where the defect came. The evaluation of the constructive notice factors is usually a task for the jury unless the evidence "requires the jury to resort to conjecture, guess or suspicion." <u>Lanni v. Pennsylvania RR Co.</u>, 88 A.2d 889 (1952). That was the case in our matter subjudice.

In another case of <u>Farina v. Miggsy Corp. Five and Six</u>, cited in Plaintiff's brief at 2010 WL 302 4752 (M.D. Pa. 2011), Judge James Munley denied a Motion for Summary Judgment because the Plaintiff fell on a sticky and gritty floor, which the court found as sufficient evidence of constructive notice. In the case herein, there was no such evidence presented concerning the condition of the floor, so Plaintiffs reference to the Middle District Court decision is neither controlling nor persuasive.

Where, however, the evidence indicates that the transitory condition is traceable to persons other than those for whom the owner is, strictly speaking, ordinarily accountable, the jury may not consider the owner's ultimate liability in the absence of other evidence which tends to prove that the owner had actual notice of the condition or that the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it. <u>Katz v. John Wanamaker, Supra.</u>, <u>Parker v. McCrory Stores</u>, 376 Pa. 122; 101 A.2d 377 (1954); <u>Sheridan v. Horn & Hardart</u>, 366 Pa. 485, 77

10

A.2d 362 (1951); <u>Borsa v. Great Alt. & Pac Tea Co.</u>, Supra; <u>Potter v. Glosser Bros. Dept. Stores</u>, 146 Pa. Super. 129, 130-31, 22 A.2d 28, 29 (1941).

As such, under Restatement 2d. ss 343 and 344 and the supporting case law, since such proof was absent from the record in the instant case, the trial court herein denies the post trial motion of Plaintiff.