436 A.2d 994

**William TREADWAY, Appellant,**

v.

**EBERT MOTOR COMPANY.**

Superior Court of Pennsylvania.

Argued March 2, 1981.

Filed Oct. 30, 1981.

Petition for Allowance of Appeal Denied March 25, 1982.

42

Paul Sandler, Philadelphia, for appellant.

Leslie A. Miller, Philadelphia, for appellee.

Before CERCONE, President Judge and WICKERSHAM and BROSKY, JJ.

WICKERSHAM, Judge:

Appellant, William Treadway, filed a Complaint in Trespass against defendant, Ebert Motor Company, for injuries and damages sustained as a result of a fall on February 1, 1975 at defendant's premises. Appellant alleged, *inter alia,* that the defendant failed to use due care in installing a metal plate over a ditch outside of defendant's doorway which the defendant knew, or should have known, would cause an unreasonable risk of harm to the plaintiff and in addition, that the defendant failed to remove wet substances, including snow, which completely covered the plate and created a slippery surface. Furthermore, it was alleged that the defendant was under a duty of reasonable care to warn the invitee of any dangerous or unsafe condition.

The case was tried before the Honorable Joseph H. Stanziani and a jury on March 5 and 6, 1980. At trial, defendant admitted that it owned, controlled and possessed the property and was under a duty to maintain said premises. Additionally, defendant admitted that it installed a metal plate approximately ten feet by two feet at or near a doorway used to enter and exit the defendant's shop. Moreover, the plate was installed several days before appellant's fall and the purpose of the steel plate was to temporarily cover a worksite ditch while pipe was being laid. Record at 70–71.

At trial, the appellant testified that on February 1, 1975 he was employed by Contract Service Company as a mechanic and truck driver. Upon instructions from his employer,

he drove a tractor to the defendant, Ebert Motor Company's place of business in Lansdale, Pennsylvania, to have the defendant inspect the tractor. Appellant also testified that it had been snowing on his way to work that morning, but that it had stopped by the time he left Contract Service Company to go to Ebert Motor Company, which was approximately 4, 5 or 6 miles away. He testified that the ground and roadways were covered by a layer of snow.

Upon arrival at the defendant's place of business, William Treadway parked the tractor in front of a big garage door and walked to the office entrance and after having a discussion with Bob Yoder, the shop foreman, with respect to the tractor, he and Yoder went to visually inspect the tractor. They walked through the interior of the building in order to exit through a small doorway which was placed within the larger garage door.

Q   Had you ever used that door before?

A   Yes.

Q   Did anyone ever tell you not to use that door before?

A   No.

Q   Did anyone ever tell you on the morning of this incident that you should not walk out through that door?

A   No.

Q   Were there any signs posted which said you shouldn't use that door?

A   No, there weren't.

Q   Were there any signs posted, Mr. Treadway, that there was any type of dangerous condition outside the door?

A   No.

Q   Mr. Treadway, did you attempt to walk through that door in order to get to where your tractor was?

A   Yes, I did.

Q   And, what happened, Mr. Treadway, when you walked out the door?

A   Well, you have to step over about a six inch piece of the door.

Q   I'm sorry, I didn't mean to interrupt you, you were talking loud.   When you say a six inch piece of door—

. . . .

Q   Would you describe the six inch piece that you just referred to?

A   The little door don't go clear to the ground.

Q   What is below that?

A   Part of the big door.

Q   Now, what happened when you attempted to go through the door, Mr. Treadway?

A   I stepped out the door and slid on the snow and fell.

Q   When you stepped out the door what step were you at when you slipped?

A   I had my foot out, I believe.

Q   Which step?

A   It was my first step out and I fell down and hit my knee.

Q   Now, can you describe how you fell, what the surface was underneath you?

. . . .

A   I fell down and hit the ground, that's all.

Q   Can you describe the surface under you and what you felt?

A   After I fell I looked and seen there was a snow covered plate there.

Q   Can you describe the type of plate that was there?

A   It was a wet snow and it was slippery from the wet snow.

Q   Now, anytime that you walked through that door before was there ever a plate?

A   No.

Q   About how much snow would you say accumulated on that plate?

A   Just enough to cover everything, the ground.   Even the road was covered.

. . . .

Q   Can you describe how you fell?

A  I put my hand on the door to open it—. . . And held the door open and I stepped out. And as soon as I stepped out, I slid and I fell and my knee hit the ground. Record at 24–28.

At the close of plaintiff's evidence relative to liability, the trial judge granted defendant's motion for nonsuit, later affirmed by the Montgomery County Court *En Banc.* This appeal followed.[1]

In *McKenzie v. Cost Brothers, Inc.,* 487 Pa. 303, 307, 409 A.2d 362, 364 (1979), Mr. Justice Nix speaking for our supreme court said:

In reviewing the validity of the entry of a compulsory nonsuit, plaintiff must be given the benefit of every fact and reasonable inference arising from the evidence. *See Francioni v. Gibsonia Truck Corp.,* 472 Pa. 362, 372 A.2d 736 (1977); *Forry v. Gulf Oil Corp.,* 428 Pa. 334, 237 A.2d 593 (1968); *Wilson v. Howard Johnson Restaurant,* 421 Pa. 455, 219 A.2d 676 (1966). All conflicts in the testimony must be resolved in plaintiff's favor and the entry of the compulsory nonsuit is only supportable in a clear case where the facts and circumstances have as the only conclusion the absence of liability. *See Francioni v. Gibsonia Truck Corp., supra; Antonson v. Johnson,* 420 Pa. 558, 218 A.2d 123 (1966); *Jurich v. United Parcel Service of New York,* 239 Pa.Super. 306, 361 A.2d 650 (1976).

1. Appellant presents three questions for our consideration:
   Did the Trial Court abuse its discretion and commit an error of law in entering a judgment of non-suit without considering the evidence presented particularly with respect to plaintiff's cause of action that the snow covered metal plate at the exit to defendant's premises created an unsafe condition?
   Did the Trial Court abuse its discretion and commit an error of law by failing to apply the standard of care of a business invitee which would have required defendant to protect the plaintiff not only against dangers which he knows, but also against those which with reasonable care he might discover?
   Did the lower Court *en banc* commit an error of law by setting too high a standard to measure defendant's culpability by requiring the plaintiff to prove that the surface was extremely more slippery than the surrounding area?
   Brief for Appellant at 2.

In its opinion under date of July 9, 1980, the Montgomery County Court *En Banc*, holding that the motion for nonsuit was properly granted said:

Plaintiff now argues that he presented two alternative theories of liability. First, that the defendant was negligent in failing to remove the snow. Second, that the use of the metal plate itself was dangerous and when wet from snow, it created an exceptionally slippery and dangerous condition.

With respect to the first theory (when generally slippery conditions prevail), plaintiff must prove: (1) that snow and ice had accumulated in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians; (2) that the property owner had notice, actual or constructive, of the existence of such conditions; and (3) that it was the dangerous accumulation of snow which caused the plaintiff to fall. *Wilson v. Howard Johnson Restaurant*, 421 Pa. 455 [219 A.2d 676] (1966), *Rinaldi v. Levine*, 406 Pa. 74 [176 A.2d 623] (1962). Plaintiff testified there was just enough snow to cover the ground; there were no ridges or elevations of snow or ice which had been allowed to accumulate.

With respect to the second theory, there is no evidence in the record to support plaintiff's conclusions that the metal plate itself created an especially dangerous condition, or that the plate when covered with snow presented a surface extremely more slippery than the surrounding area. All we know about the plate is that it was 10 feet by 2 feet and it was covering an open ditch.

Based on the evidence presented in plaintiff's case-in-chief, we find the plaintiff failed to establish a prima facie case of negligence against the defendant. Therefore, the motion for non-suit was properly granted.

Lower court opinion at 3–4.

Appellant maintains that defendant's failure to remove the snow was merely a tangential aspect of his case and that the primary theory upon which his cause of action was based

was defendant's failure to exercise due care in installing a metal plate at the foot of an exit to defendant's premises which, when hidden and made slippery by a layer of wet snow, caused an unreasonable risk of harm which required, at a minimum, reasonable care to warn invitees. As to this theory, appellant contends that the court *en banc* failed to give him the benefit of every fact and inference arising from the evidence by concluding that all that it knew about the metal plate was that it is two feet by ten feet and that it was covering an open ditch, and that there was no evidence that the plate itself created an especially dangerous condition or that the plate when covered with snow presented a surface extremely more slippery than the surrounding area.

"The applicable principles of law with respect to the question of negligence are well settled. Plaintiff was a business visitor upon the premises of defendant, which owed her the duty of keeping the premises reasonably safe and of correcting any unsafe condition which was discoverable by the exercise of reasonable care and diligence. Defendant, however, was not an insurer, and therefore the mere happening of an accident did not impose liability upon it. *Parker v. McCrory Stores Corp.*, 376 Pa. 122 [101 A.2d 377]. In order for plaintiff to recover, it was incumbent upon her to prove that the condition of which she complained was the result of the direct negligence of an employee of defendant, or that defendant had sufficient constructive notice of the defect to have enabled it to correct that defect. *Lanni v. Penn[sylvania] R. Co.*, 371 Pa. 106 [88 A.2d 887]."

*Hess v. Sun Ray Drug Co.*, 387 Pa. 199, 200–201, 127 A.2d 699, 700–701 (1956)(quoting from the opinion of the lower court).

In *Crotty v. Reading Industries, Inc.*, 237 Pa.Super. 1, 7–8, 345 A.2d 259, 262–64 (1975), we said:

The duty of a possessor of land towards a third person entering the land has been historically measured by the status of the entrant at the time of the accident. Resulting from a mixture of a property law tracing its heritage

to feudalism with the relatively recent development of the law of negligence, the limited liability of a possessor of land depending upon the status of the entrant remains in the majority of jurisdictions a viable concept. *See, e. g., Annot., Modern Status of Rules Conditioning Landowner's Liability Upon Status of Injured Party As Invitee, Licensee, or Trespasser*, 32 A.L.R.3d 508 (1970); 2 F. Harper and F. James, *The Law of Torts*, §§ 27.1–.21 (1956). The landowner's duty of protection toward a business visitor is the highest duty owed to any entrant upon the land. The rule as stated in the early English case of *Indermaur v. Dames*, L.R. 1 C.P. 274, 35 L.J.C.P. 184, *aff'd*, L.R. 2 C.P. 311, 36 L.J.C.P. 181 (1866) places the possessor of land under an affirmative duty to protect the business visitor not only against dangers of which he knows but also against those which with reasonable care he might discover. The occupier of the premises ordinarily owes the business visitor 'not only the duty not to injure him by unreasonably dangerous conduct while he is upon the premises, but also the affirmative duty to use reasonable care to discover unreasonably dangerous conditions of the premises and either put the premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation or warn him of the danger.' *Annot.*, supra at 518 (footnotes omitted).

. . . .

The duty of inspection distinguishes the obligation of the possessor owed to business visitors from the obligation owed to licensees. *See generally Annot.*, supra. A visual inspection has long been required for the protection of business visitors; *see, e. g., Argo v. Goodstein*, [438 Pa. 468, 265 A.2d 783 (1970)] supra; *Miller v. Hickey*, [368 Pa. 317, 81 A.2d 910 (1951)] supra, (duty to inspect fire escape); *Travers v. Delaware County*, 280 Pa. 335, 124 A. 497 (1924) (bridge); and indeed, the duty may go beyond a mere visual inspection. *Starke v. Long*, [221 Pa.Super. 338, 292 A.2d 440 (1972)] supra, (jury may determine whether more than a visual inspection was reasonably required). . . .

. . . .

The occupier's duty is one of due care under all the circumstances. That duty includes the duty to inspect the premises and to discover dangerous conditions. *Durning v. Hyman*, 286 Pa. 376, 133 A. 568 (1926); and the duty to use care not to injure a business visitor by negligent activity. Restatement (Second) of Torts, § 341 A (1965).

Instantly, the lower court failed to consider evidence that the location of the steel plate was perpendicularly adjacent to a door which was used for ingress and egress. The evidence indicated that in order to exit from the door it was necessary to lift one's foot over a six-inch piece of the garage door and step onto the wet metal plate which had been temporarily installed over a ditch. Furthermore, since the plate was outside the building it could not be observed by the unwary pedestrian until the door was open. Plaintiff's testimony indicated that the plate was not visible, however, as it was completely hidden by a layer of snow.

The location of the plate was important because it was at a place which the defendant knew would be traveled by invitees. Indeed, it would be impossible not to step on the plate when exiting from that door. "In determining the extent of preparation which an invitee is entitled to expect to be made for his protection, the nature of the land and the purposes for which it is used are of great importance." *McKenzie v. Cost Brothers, Inc., supra*, 487 Pa. at 309, 409 A.2d at 365 (quoting Restatement (Second) of Torts § 343, Comment (e) (1965)). Simply by where the plate was located, the risk of injury was increased.

> The amount of care demanded by the standard of reasonable conduct must be in proportion to the apparent risk. If the danger becomes greater, the actor is required to exercise caution commensurate with it. W. Prosser, *Handbook of the Law of Torts* (4th ed. 1971) p. 180. *McKenzie v. Cost Brothers, Inc.*, 487 Pa. 309, 409 A.2d at 365.

*McKenzie v. Cost Brothers, Inc., supra*, 487 Pa. at 309, 409 A.2d at 365 (quoting W. Prosser, *Handbook of the Law of Torts* (4th ed. 1971 at 180)).

■ The fact that the steel plate was not visible is important particularly in view of plaintiff's undisputed status as a business invitee. An invitee is not required to be on alert to discover defects which are not obvious. The defendant had a duty to keep his premises safe for the plaintiff and to warn him of potential hidden perils which he knew or should have known of in the exercise of reasonable care. *Stark v. Lehigh Foundries*, 388 Pa. 1, 130 A.2d 123 (1957). An invitee or business visitor is entitled to rely on the assumption that such a duty has been performed. *Katz v. John Wanamaker Philadelphia, Inc.*, 381 Pa. 477, 112 A.2d 65 (1955). The landowner's duty of protection toward business visitors is the highest duty owed to any entrant upon land, and the landowner is under an affirmative duty to protect the business visitor not only against dangers which he knows, but also against those which with reasonable care he might discover. The business visitor enters landowner's premises with implied assurance of preparation and reasonable care for his protection and safety while he is there. *Crotty v. Reading Industries, Inc., supra.*

■ From the testimony presented, it was a question for the jury to determine whether the metal plate combined with the wet snow created a dangerous condition which the defendant had a duty to render safe or to warn the plaintiff of its existence. It would be a most reasonable inference from the evidence that the commingling of the snow and metal plate produced a skidding surface. This is not a situation which would require expert testimony since the circumstances are familiar and determinable from the common denomination of every-day experience. Indeed,

Expert testimony is inadmissible when the matter can be described to the jury and the condition evaluated by them without the assistance of one claiming to possess special knowledge upon the subject. *Jacob v. City of Philadelphia*, 333 Pa. 584, 5 A.2d 176; *Miller v. City of Philadelphia*, 345 Pa. 1, 9, 25 A.2d 185 (where this Court, speaking through Mr. Justice Linn, upheld the refusal of expert testimony of an architect regarding the unsafe maintenance and construction of a trail in Fairmont Park).

*Burton v. Horn & Hardart Baking Co.*, 371 Pa. 60, 64, 88 A.2d 873, 875 (1952); *see also McKenzie v. Cost Bros. Inc.*, *supra*, 487 Pa. at 311–12, 409 A.2d at 366 (1979).

A theory similar to the plaintiff's was advanced in *Kuminkoski v. Daum*, 429 Pa. 494, 240 A.2d 524 (1968). In *Kuminkoski*, the plaintiff sued a store owner for injuries sustained in a fall when exiting from the premises. The defendant had sprinkled his floor with sawdust, and the sawdust was tracked outside and fell on the steps. Unknown to the plaintiff, and without having a chance to become acquainted with that fact, some wood chips and fine gravel commingled with sawdust on the steps, to form an unfirm surface and the plaintiff slipped. The trial court entered judgment for the defendant, stating that the plaintiff did not meet its burden in establishing an unsafe condition. The Pennsylvania Supreme Court reversed. In its opinion, the supreme court cited the case of *Katz v. John Wanamaker Philadelphia, Inc.*, *supra*, in which the trial court directed a verdict for the defendant where plaintiff had also fallen on slippery steps. In reversing the lower court in *Katz v. John Wanamaker Philadelphia, Inc.*, *supra*, 381 Pa. at 481, 112 A.2d at 66–67, the court stated:

> From the testimony of two women the jury could have found that there was a considerable quantity of dirt as well as water on the steps, and that the combination of the two can form a slimy and slippery condition. Plaintiff's evidence must be considered in a light most favorable to her with the benefit of the inferences deduced from the testimony. So considered, we cannot say that plaintiff failed to make out the existence of an unsafe or dangerous condition.

■ In dismissing plaintiff's second theory by stating that the plaintiff failed to present evidence that the plate when covered with snow presented "a surface extremely more slippery than the surrounding area," the court *en banc* imposed a burden on the plaintiff which has no support in law. Plaintiff's burden was only to establish a *prima facie* unsafe or dangerous condition, and, on appeal, we must

resolve all conflicts in the evidence therein in his favor and give him the benefit of every fact and inference which may be reasonably deduced therefrom.

Significantly, in *Bromberg v. Gekoski*, 410 Pa. 320, 189 A.2d 176 (1963) our supreme court reversed a jury verdict for the defendants and ordered a new trial when the trial judge described a defective condition as "one that appears very, very dangerous." Particularly pertinent to the case at bar, the court declared:

This, of course, was legally incorrect and placed too great a standard upon the plaintiffs in establishing the defendant's culpability. Sidewalks must be so maintained that they will not present an unreasonable risk of harm to pedestrians. What constitutes such a condition depends upon all of the circumstances. It may generally be defined as one attended with an unreasonable risk of harm, one that is hazardous or unsafe or one that constitutes a danger to persons traveling thereon. It does not have to be such that is *very very* hazardous, *very, very* unsafe or *very, very* dangerous. See, *Silberman v. Dubin*, 155 Pa.Super. 3, 36 A.2d 854 (1944); *McCracken v. Curwensville Boro.*, 309 Pa. 98, 163 A. 217, 86 A.L.R. 1379 (1932); *Lawrence v. City of Scranton*, 284 Pa. 215, 130 A. 428, 41 A.L.R. 454 (1925); *Davis v. Shenandoah Borough*, 273 Pa. 501, 117 A. 207 (1922); *Rinaldi v. Levine*, 406 Pa. 74, 176 A.2d 623 (1962) (Court's emphasis).

*Id.* 410 Pa. at 322–323, 189 A.2d at 177.

Furthermore, there is no requirement that the plaintiff make a comparative analysis of the "slipperiness" of a particular surface. In *Loney v. Denenberg*, 166 Pa.Super. 378, 71 A.2d 842 (1950) the plaintiff was injured when she slipped on a floor which had been sprinkled with cleaning compound. Recovery in the lower court was affirmed by the superior court on the theory that it was a question of fact for the jury to decide which caused the plaintiff to slip:

Where, as here, there may be a reasonable difference of opinion as to whether appellant's negligence was the prox-

imate cause of the injuries, the question of legal causation is for the jury.

*Id.,* 161 Pa.Super. at 382, 71 A.2d at 844 (citations omitted), 166 Pa.Super.

The order of the Montgomery County Court *En Banc* denying plaintiff's motion for removal of the non-suit is reversed and the plaintiff is hereby awarded a new trial consistent with this Opinion.