J.S07032/16

| | | |
|---|---|---|
| ALBERT E. EISBACHER AND LUCILLE EISBACHER, HIS WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| MAYTAG CORPORATION, MAYTAG SALES, INC., MAYTAG NORTHEAST REGIONAL DISTRIBUTION CENTER, F.R. COVINGTON PROPERTY HOLDING L.P., FIRST INDUSTRIAL DEVELOPMENT INVESTORS, LLC, FIRST INDUSTRIAL DEVELOPMENT SERVICES, FIRST INDUSTRIAL REALTY, COVINGTON INDUSTRIAL PARK OWNER'S ASSOCIATION, AKA COVINGTON INDUSTRIAL PARK, AND CAMMEBY'S MANAGEMENT COMPANY LLC | : | |
| | : No. 1163 MDA 2015 | |

Appeal from the Order Entered May 28, 2015
in the Court of Common Pleas of Lackawanna County Civil Division
at No(s): 08-CV-1534

BEFORE: BOWES, OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED MARCH 09, 2017**

Appellants, Albert E. Eisbacher and Lucille Eisbacher, appeal from the order of the Lackawanna County Court of Common Pleas granting summary judgment in this slip and fall action in favor of Appellees, Maytag Corp., Maytag Sales, Inc., and Maytag Northeast Regional Distribution Center[1] (collectively "Maytag"). Appellant Albert Eisbacher, a business invitee,

---

[*] Former Justice specially assigned to the Superior Court.

[1] We corrected Appellees' names in the caption. The remaining parties listed on the caption are not parties to this appeal.

contends that the trial court erred in concluding that Maytag, who "merely leased" the facility, did not owe a duty of care to Mr. Eisbacher. Applying Restatement (Second) of Torts § 328E, we hold that a material question of fact exists whether Maytag possessed the land on which Mr. Eisbacher fell. If the jury determines that Maytag possessed this land, it must then determine whether Maytag is liable for Mr. Eisbacher's injuries under principles of common law negligence. Accordingly, we reverse the trial court's order and remand for further proceedings.

We state the facts of record in the light most favorable to Appellant,[2] the nonmoving party.[3] Maytag leased property within Covington Industrial Park. On August 26, 2004, Goldsboro NI Industrial, LP ("Goldsboro"), purchased Covington Industrial Park from F.R. Covington Property Holding, L.P. and First Industrial Development Investors, LLC. Goldsboro also assumed the leases for the park, including the lease with Maytag.

Two documents are pertinent to this appeal: Maytag's lease with Goldsboro and Goldsboro's snow removal contract with Dunbar's Evergreen Landscaping ("Dunbar's").

---

[2] For ease of disposition, we refer to Appellants in the singular.

[3] *See Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175, 1179 (Pa. 2012).

First, Maytag's lease with Goldsboro defines "Premises" as follows:

> The Premises (hereinafter defined) is located in the Covington Industrial Park, Covington Township, Lackawanna County, Pennsylvania. The Premises consists of the land and the building and other improvements (the "Building") to be construed on such land, as such land is more particularly identified on <u>Exhibit "Premises"</u> (collectively, the "Premises").

R.R. at 283 (emphasis in original).[4]

Section 1.1 of the lease provides that Landlord (Goldsboro) leases "the Premises" to Tenant (Maytag) subject to:

> the non-exclusive right to use for their intended purposes the roads, sidewalks, driveways, roadways, detention basins and landscaped areas intended for the common use of the owner and occupant of the Premises, and their respective invitees . . . as more particularly shown on <u>Exhibit "Common Areas"</u>, subject to the provisions of Article Twenty-seven and Article Thirty-two (the "Common Areas").

*Id.* (emphasis in original).

Article 27 of the lease provides the following with regard to "common areas":

> SECTION 27.1. All Common Areas, including but not limited to roads, driveways, sidewalks, detention basins and other common facilities as may be provided and designated as Common Areas from time to time... **and at all times, are subject to the sole and exclusive control of the Landlord and the owners of other properties in the Covington Industrial Park**, subject to applicable governmental requirements...

---

[4] For the parties' convenience, we cite to the reproduced record.

*Id.* at 308 (emphasis added).

Finally, Article 10 of the lease states in relevant part:

> SECTION 10.1. Landlord [Goldsboro] and Tenant [Maytag] have agreed that, although the expenses for the maintenance and repair of the items in this Section 10.1 relating to the operation of the Premises and Common Areas are among the expenses to be paid by Tenant as Additional Rent, such expenses shall be paid by Tenant to Landlord or Landlord's affiliate management company as Additional Rent in accordance with this Section 10.1, and **Landlord**, subject to receipt of such expenses for the following items and notwithstanding anything contained in this Lease to the contrary, **shall administer and maintain**, and where appropriate, collect, the following items throughout the Term (a) landscaping and lawn mowing at the Premises, (b) **all snow and ice removal from parking areas, loading areas and roadways on the Premises**. . . .

*Id.* at 295-96 (emphases added). An exhibit to the lease marked "Premises" is a drawing which depicts an approximately sixty-acre lot encompassing Maytag's building, roads, and parking areas. *Id.* at 321. Another exhibit marked "Common Areas" is a drawing of the Premises which labels several shaded areas as "common areas." *Id.* at 323. The shaded areas do not include the trailer drop lot where Appellant slipped and fell.

Second, the snow removal contract between Goldsboro and Dunbar's provides for Dunbar's "independent services" of snow removal "at, on or around the above described premises," which the contract defined as 100 First Avenue, Gouldsboro, PA 18424, the Maytag complex. Ex. J to Appellant's Br. in Resp. to Maytag's Second Mot. for Summ. J., 5/13/15.

The contract disclaims any employer-employee relationship and explicitly identifies Dunbar's as an independent contractor. *Id.* at 442.

The snow removal contract states: "[The] contract price to be paid Contractor . . . please refer to Exhibit 'D' payable monthly within 30 days of receipt by Owner(s) of the complete Invoice Package (as described) and completion of all work (for Open Contracts, see 'Contract notice to proceed')." *Id.* Exhibit D, a letter dated August 22, 2005, includes the following payment schedule:

> 1. Plowing of entire Maytag site and clearing of sidewalks:
> 1 inch to 4 inches $2,600.00 per push
>
> 2. Salting: $1,800.00 per service
>
> Note: 1. During and after snow storms, Dunbar's will plow area where existing trailers are moved or upon request. Rate will be $70.00/hour/truck.

*Id.* at 446.

On the evening of March 6, 2006, Appellant, a tractor-trailer driver employed by a third party, picked up cargo from Maytag's building within Covington Industrial Park. There were snow flurries, but the snow was not accumulating. Ex. A to Appellant's Br. in Resp. to Maytag's Second Mot. for Summ. J. Appellant drove the tractor-trailer to the Premises. The sole access road to the Premises was a blacktop road covered with snow. A guardhouse on the road checked trucks in and out of the Premises. *Id.* at 396-97. Maytag contracted with a third-party vendor to provide the guards staffing the guardhouse. *Id.* at 398.

Appellant entered the Premises and drove to an unpaved, dirt lot—the trailer drop lot—located on the Premises north of and adjacent to Maytag's building. Ex. A to Appellant's Br. in Resp. to Maytag's Second Mot. for Summ. J. at 99; *Id.* at 438. According to Appellant, the entire lot was unplowed and covered in a rough, compacted layer of snow. Ex. A to Appellant's Br. in Resp. to Maytag's Second Mot. for Summ. J. at 102. Appellant parked his tractor-trailer in the lot, exited the tractor and unhooked the trailer. As he was returning to reenter the tractor, he slipped and fell on the ice and struck his head on the tractor, causing serious injuries.

Chad Faldowski, manager of the Maytag facility at the time of the accident, testified: "There was a company that was contracted—[an] outside contractor that would plow that [trailer drop] lot. I do not know the name of the company. They would change them one year to the next based upon bids of the contract." *Id.* at 386, 404. Faldowski stated that Maytag did not enter contracts with snowplowing companies, but otherwise, he did not remember how the contracts were set up. *Id.* at 405-06. He claimed that the trailer drop lot was plowed on the date of Appellant's accident.[5] *Id.* at 404. Faldowski also testified as follows with regard to the movement of trailers in the trailer drop lot:

---

[5] For purposes of this appeal, we accept Appellant's testimony that the trailer drop lot was not plowed at the time of his accident.

**Q. And as the manager of that facility, did you have the authority, if necessary, to move those trailers?**

**A. We were able to move any trailer that we could, yes.**

**Q. So if a trailer was in the way or wasn't in a specific location or you needed to move it for any type of reason, you had the wherewithal and the means to do that?**

**A. That is correct.**

Q. How would that be done?

A. We had what we call a yard spotter. It was a workhorse basically, a yard machine that would transport the trailers from the drop lot to the doors.

Q. A yard spotter, was that somebody who was in the yard all the time?

A. Correct.

Q. He was employed by Maytag?

A. Maytag, correct.

*Id.* at 407 (emphasis added).

On March 5, 2008, Appellant commenced an action against the above-captioned defendants via writ of summons. On April 30, 2008, Appellant filed a complaint against the above-captioned defendants for negligence. He did not name Goldsboro or Dunbar's as a defendant. On April 26, 2010, the court granted the motion for summary judgment of defendants F.R. Covington Property Holding, L.P., First Industrial Development Investors, LLC, First Industrial Development Services, First Industrial Realty, and

Covington Industrial Park Owner's Association. On May 14, 2010, the parties stipulated to dismiss Cammeby's Management Company, LLC, the last non-Maytag defendant.

Maytag filed a motion for summary judgment, which the court denied without explanation on January 22, 2014. On March 30, 2015, Maytag filed a second motion for summary judgment.[6] Appellant filed a response that asserted he was a business invitee and did not invoke the collateral estoppel doctrine. Following a hearing, the court granted Maytag's motion on May 28, 2015. A different judge decided this motion than the judge who decided Maytag's first motion for summary judgment. When granting this motion, the judge concluded that (1) Maytag "merely leased" the subject property from Goldsboro, (2) Goldsboro was responsible for furnishing snow removal under the lease, (3) Goldsboro provided snow removal through its contract with Dunbar's, and therefore (4) Maytag had no duty to Appellant regarding proper snow removal. Order, 5/28/15, at 3-4.

---

[6] Maytag did not contend the "hills and ridges" doctrine precluded recovery. *See generally Rinaldi v. Levine*, 176 A.2d 623, 625 (Pa. 1962) (observing, *inter alia*, "no liability created by a general slippery condition"); *Morin v. Traveler's Rest Motel, Inc.*, 704 A.2d 1085, 1088 (Pa. Super. 1997) (hills and ridges doctrine applies to business invitee injured on snow or ice in business owner's parking lot).

On June 26, 2015, Appellant filed both a motion for reconsideration[7] and a timely notice of appeal. Appellant's motion for reconsideration, for the first time, invoked the doctrine of collateral estoppel. The court did not order Appellant to comply with Pa.R.A.P. 1925(b).

Appellant raises the following issues in this appeal:

> Whether [the trial court's] order granting [Maytag's] motion for summary judgment is barred by the doctrine of collateral estoppel?

> Whether [Maytag,] as possessors of land, owed a common law duty to [Appellant] as a business invitee such that it [is] liable for physical harm to [Appellant]?

> Whether [Maytag's] trailer drop lot was included within the lease agreement with its[] landlord as an area in which the landlord would provide for the removal of snow/ice?

Appellant's Brief at 4-6.[8]

In support of his first argument, Appellant contends that the trial court erred in granting Maytag's second motion for summary judgment on May 28, 2015, because the court had previously denied Maytag's substantively

---

[7] The judge did not act upon Appellant's motion for reconsideration within thirty days after the entry of summary judgment. As a result, the judge lost jurisdiction to act on this motion after thirty days, leaving intact our jurisdiction over this appeal. *See* 42 Pa.C.S. § 5505; Pa.R.A.P. 1701(b)(3).

[8] Despite raising three issues, Appellant presents four arguments in his brief in violation of the rule that "argument shall be divided into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a). We decline to quash. *See PHH Mortg. Corp. v. Powell*, 100 A.3d 611, 615 (Pa. Super. 2014) (refusing to quash appeal despite numerous violations of appellate briefing rules).

identical motion for summary judgment on January 22, 2014, and Maytag conceded that no "meaningful discovery" took place in between the two motions. *Id.* at 21. Appellant is not entitled to relief on this issue.

We apply the following standard of review to an order granting a motion for summary judgment:

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Daley*, 37 A.3d at 1179 (citation omitted).

> Collateral estoppel, or issue preclusion, is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated.
>
> > Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

- 10 -

***Selective Way Ins. Co. v. Hospitality Grp. Servs., Inc.***, 119 A.3d 1035, 1042 (Pa. Super. 2015) (*en banc*) (citations and internal quotation marks omitted).

Failure to raise an issue before the trial court, however, results in waiver of the issue on appeal. ***Dollar Bank v. Swartz***, 657 A.2d 1242, 1245 (Pa. 1995) (citations omitted) ("It is a fundamental principle of appellate review that we will not reverse a judgment or decree on a theory that was not presented to the trial court"). Even if an issue "was included in [a] subsequently filed motion for reconsideration, issues raised in motions for reconsideration are beyond the jurisdiction of this Court and thus may not be considered by this Court on appeal." ***Rabatin v. Allied Grove Corp.***, 24 A.3d 388, 391 (Pa. Super. 2011) (citation omitted); ***accord*** Pa.R.A.P. 302(a).

Here, Appellant invoked collateral estoppel for the first time in his motion for reconsideration to the trial court's order granting Appellees' second motion for summary judgment. Thus, he has waived it on appeal. ***See*** Pa.R.A.P. 302; ***Dollar Bank***, 657 A.2d at 1245; ***Rabatin***, 24 A.3d at 391. Regardless, because no prior lawsuit exists, the doctrine of collateral estoppel does not apply.[9] ***See Selective Way Ins. Co.***, 119 A.3d at 1042.

---

[9] It appears that Maytag's reliance on "collateral estoppel" is a misnomer, and that it actually intended to invoke the coordinate jurisdiction doctrine. "Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial

We summarize Appellant's second and third arguments together. Appellant claims the trial court erred by failing to recognize that Maytag was in exclusive possession of the land where Appellant fell and thus owed Appellant a common law duty of care as a business invitee. Appellant's Brief at 24-27. In support of his position, Appellant refers to discovery responses purportedly establishing that Maytag had exclusive possession and control over the land on which Appellant was injured. *Id.* at 25-26. For example, according to Appellant, Maytag conceded that the trailer drop lot was in its exclusive control and that only Maytag could move trailers. *Id.* at 25.

Maytag responds that it had no duty of care under common law or the lease. Maytag's Brief at 11-16. Maytag claims it did not have possession and control of the trailer drop lot under the precepts within Restatement (Second) of Torts § 328E. *Id.* at 15. Only Goldsboro, Maytag says, was in possession of the land under Section 328E. *Id.* Maytag further maintains that the lease obligated Goldsboro—and not Maytag—to remove "all snow and ice . . . from parking areas, loading areas and roadways on the . . . Premises." *Id.* at 11 (quoting lease). Maytag contends that the trailer drop lot is a parking area, so Maytag had no contractual duty to remove snow and ice. *Id.* at 12.

---

judge [generally] may not alter resolution of a legal question previously decided by a transferor trial judge." *Zane v. Friends Hosp.*, 836 A.2d 25, 29 (Pa. 2003) (citation omitted). We need not discuss the coordinate jurisdiction doctrine further, however, because Maytag only attempted to raise the separate and distinct doctrine of collateral estoppel.

Appellant counters that Maytag's reliance on the lease is misplaced, because the trailer drop lot is not a parking area, loading area, or roadway. Appellant's Brief at 38-39. In addition, Maytag had a common law duty of care "regardless of any language in the lease agreement," because "multiple duties can exist concurrently." *Id.* at 31.

We hold that Maytag is not entitled to summary judgment, because a genuine issue of material fact exists as to whether Maytag was in possession of the trailer drop lot where Appellant, a business invitee, slipped and fell.

> A party is subject to liability for physical harm caused to an invitee if he knows of or reasonably should have known of the condition and the condition involves an unreasonable risk of harm, he should expect that the invitees will not realize it or will fail to protect themselves against it, and the party fails to exercise reasonable care to protect the invitees against the danger.

***Blackman v. Fed. Realty Inv. Trust***, 664 A.2d 139, 142 (Pa. Super. 1986) (citing Restatement (Second) of Torts § 343 (1965)).

"In order for the party to be liable, it must first be a possessor of land." *Id.* A possessor of land is

> (a) a person who is in occupation of the land with intent to control it or
>
> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
>
> (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Restatement (Second) of Torts § 328E (1965).[10]  Whether a defendant is a possessor of land is normally a question for the fact-finder.  *Leichter v. E. Realty Co.,* 516 A.2d 1247, 1249 (Pa. Super. 1986).  Two critical factors determine whether the defendant possesses land: (1) the legal interest it has in the land, and (2) the degree of control it actually exercises over the land.  *See, e.g., Blackman*, 664 A.2d at 142 (whether easement holder is possessor turns upon whether "[it] holds an easement, and, if so, the manner in which [it] exercises the prerogatives of that easement").  Only after determining that the defendant is in possession of land can we reach the more crucial inquiry of whether the possessor owes a duty of care.  *Id.*

"The standard of care a possessor of land owes to an individual who enters upon the land depends upon whether the [individual] is a trespasser, licensee, or invitee."  *Emge v. Hagosky*, 712 A.2d 315, 317 (Pa. Super. 1998).  A business invitee is a "person who is invited to enter or remain on land for a purpose directly or indirectly connected with the business dealings with the possessor of the land."  Restatement (Second) of Torts, § 332 (1965); *accord Emge*, 712 A.2d at 317.  "The duty owed to a business invitee is the highest duty owed to any entrant upon land.  The landowner is under an affirmative duty to protect a business visitor not only against

---

[10] The parties agree that Section 328E applies.  *See* Appellant's Brief at 24-25; Maytag's Brief at 14-15.

known dangers but also against those which might be discovered with reasonable care." ***Id.*** (citation omitted).

Appellant was an employee of a third party independent contractor who was visiting Maytag to pick up cargo and transport it to another location in his employer's tractor-trailer. Accordingly, he was a business invitee. ***See Treadway v. Ebert Motor Co.***, 436 A.2d 994, 999 (Pa. Super. 1981) (employee of independent contractor injured in fall on defendant's premises treated as business invitee).

The question thus becomes whether Maytag was in possession of the trailer drop lot where Appellant fell. For several reasons, we conclude that this is a fact question the jury must decide.

First, Goldsboro's lease with Maytag does not resolve whether Maytag was in possession of the trailer drop lot. The lease provides that Goldsboro has "sole and exclusive control" over common areas, ***Id.***, section 27.1, but the diagram of the Premises attached to the lease indicates that the trailer drop lot is not in the common areas. The lease further provides that Goldsboro is responsible for "all snow and ice removal from parking areas, loading areas and roadways on the premises." ***Id.***, section 10.1. The parties dispute at length whether the trailer drop lot is a "parking area" that lies outside of Maytag's control, but we see nothing in the record that definitively settles this question.

Another factual question arises from the snow removal contract between Goldsboro and Dunbar's. Exhibit D to the snow removal contract provides that Dunbar's will plow and salt the "entire Maytag site." Then, in an apparent reference to the trailer drop lot, the contract states: "Note: During and after snow storms, Dunbar's will plow area where existing trailers are moved or upon request. Rate will be $70.00/hour/truck." The phrase "upon request" leaves unclear whether Goldsboro, Maytag, or both were authorized to "request" snow removal. If Maytag had authority to make this request, it may bear upon whether Maytag had control over the trailer drop lot. The jury should resolve this factual issue.

Finally, the testimony of Maytag's on-site manager, Faldowski, suggests that Maytag was in possession of the trailer drop lot. Faldowski admitted that in his capacity as Maytag's manager, he had the authority and the means to move trailers in the trailer drop lot, and Maytag employed a yard spotter for this task. From this testimony, a reasonable jury could conclude that Maytag exercised control over the location of the accident.

In view of the questions arising from Goldsboro's lease with Maytag, Goldsboro's snow removal contract with Dunbar's and Faldowski's testimony, we hold that the trial court erred by granting Maytag summary judgment. *See Blackman*, 664 A.2d at 141-42 (material fact issue existed as to whether defendant landowner as holder of easement across parking lot could be considered possessor of land with duty owing to invitees, precluding

summary judgment in personal injury action arising out of pedestrian's fall in parking lot). The jury could reasonably resolve these questions by concluding that Maytag exercised sufficient occupation and control in possession of the trailer drop lot to be in possession of the land. If the jury finds that Maytag was in possession, it then must address whether Appellant satisfies the remaining standards for tort liability, *i.e.*, whether Maytag (1) had a duty of care to Appellant, (2) breached this duty, (3) caused harm to Appellant as the proximate result of breaching this duty, and (4) caused damages to Appellant.

Order vacated. Case remanded for proceedings in accordance with this memorandum. Jurisdiction relinquished.

Judge Ott joins. Judge Bowes files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2017