IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Janet Hinerman and Richard Hinerman, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 732 C.D. 2022 |
| | : | |
| Westmoreland County Airport Authority d/b/a Arnold Palmer Regional Airport | : | |
| | : | Submitted: May 8, 2023 |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION BY JUDGE CEISLER                                    FILED: June 15, 2023

Janet and Richard Hinerman appeal from a June 15, 2022 Order of the Court of Common Pleas of Westmoreland County (Trial Court), which granted the Motion for Summary Judgment (Motion) filed by Westmoreland County Airport Authority (Airport Authority). The Hinermans argue that a genuine issue of material fact remains in their negligence action against the Airport Authority, and, therefore, the Trial Court improperly granted the Motion. Upon review, we affirm.

## I. Background

On the morning of January 20, 2020, the Hinermans arrived at Arnold Palmer Regional Airport, which is owned and maintained by the Airport Authority, to pick up a vehicle from a car rental agency located on the premises. Reproduced Record (R.R.) at 196a-97a. After collecting the keys to the vehicle, the Hinermans exited the terminal building and walked out to a parking area. *Id.* at 207a. Snow had recently fallen, but had been cleared from the paved surfaces. *Id.* at 247a. While in the parking lot, Mr. Hinerman sounded the remote-control lock button on the vehicle's key in order to pinpoint where it was parked. *Id.* at 221a-22a. When the

car's horn sounded, the Hinermans determined that the sound emanated from a separate parking lot, located farther from the terminal building and separated by a grassy area from the lot on which they were standing. *Id.* at 231a. Connecting the two parking lots were a driveway and a paved walkway, both of which had been cleared of snow. *Id.* at 247a, 250a. The grass between the two parking lots was still snow-covered, but Mrs. Hinerman recalled seeing grass blades poking through the snow. *Id.* at 247a.

Instead of using the paved walkway or the driveway, the Hinermans opted for the most direct route toward the parked car, which was across the snow-covered grassy area. *Id.* at 232a. Mr. Hinerman crossed the snow and reached the other parking lot without incident. *Id.* at 233a. While Mrs. Hinerman followed along a slightly different path, her feet stumbled into a depression in the ground, several inches deep, which had been obscured by the snow cover. *Id.* at 224a. Mrs. Hinerman landed on her knees; feeling severe pain in her left foot, she was unable to stand for approximately five minutes. *Id.* at 234. Mr. Hinerman helped his wife up to her feet and into the rental car, which she drove to their home on her own. *Id.* at 237a.

Approximately two hours after the incident, Mrs. Hinerman drove herself to a nearby hospital due to persistent pain in her left foot. *Id.* at 237a, 114a. Two days later, an orthopedist confirmed that Mrs. Hinerman had ruptured her left Achilles tendon, for which she underwent surgery on February 4, 2020. *Id.* at 134a. Following the surgery, Mrs. Hinerman attended weekly physical therapy sessions to treat her left foot from June 16, 2020 until August 14, 2020. *Id.* at 241a.

The Hinermans filed a Complaint against the Airport Authority with the Trial Court on February 26, 2021. *See id.* at 4a-15a. In Count I, the Hinermans alleged

2

that there existed on Airport Authority property "a dangerous, defective, hazardous[,] and/or unsafe condition . . . characterized by an unmarked hole and/or drop in elevation, located adjacent to a broken, cracked, and uneven parking lot area." *Id.* at 9a. The Hinermans alleged that the Airport Authority was therefore liable for negligence due to its alleged failure to "remove, repair[,] or cordon off the unsafe condition" leading to Mrs. Hinerman's injury. *Id.* at 11a-12a. In Count II, the Hinermans alleged liability for loss of consortium due to Mr. Hinerman's expenditures for his wife's medical care, as well as the loss of her "services, assistance, companionship[,] and society." *Id.* at 12a. The Hinermans requested damages, along with court costs and any other relief the Trial Court deemed just and equitable. *Id.* at 12a-13a.

The Airport Authority filed an Answer and New Matter on April 14, 2021, in which it denied the allegations. *See id.* at 16a-26a. The Airport Authority averred that Mrs. Hinerman had "voluntarily departed from a paved, cleared street adjacent to the Lot, and was instead deliberately traversing a grassy, unpaved, snow-covered area that she took as a shortcut," and that she had thereby fallen "upon a dangerous condition that was known, open, obvious, and avoidable." *Id.* at 22a. The Airport Authority asserted that the Hinermans' claims were therefore barred by the doctrines of assumption of the risk, choice-of-ways, contributory negligence, and failure to mitigate damages. *Id.*

The Hinermans offered several exhibits into evidence, including medical records and photographs of the location where Mrs. Hinerman was injured. The photographs, which were taken when no snow was present, depict a rectangular field of grass in between two asphalt-paved parking lots. *Id.* Near the field's edge is a muddy depression in the ground; a yard stick, held vertically at the center of the

3

depression, shows that the depression has a maximum depth of about five inches. *See generally* 161a-86a. Some photographs show a large puddle where rainwater had collected, with a maximum depth of about three inches, near the middle of the depression in the ground. *Id.* In addition to the exhibits, the Hinermans offered their own deposition testimony. *See generally id.* at 97a-110a; *id.* at 187a-257a.

In its defense, the Airport Authority offered the deposition testimony of Gabriel Monzo, its Executive Director, and Moe Haas, its Operations and Public Safety Director. Mr. Monzo testified that, although he had no knowledge of the depression in the ground where Mrs. Hinerman fell, it "eventually would be filled in" as part of the Airport Authority's routine maintenance duties. *Id.* at 141a-42a. In addition, Mr. Monzo testified that the grassy area was never intended for pedestrian travel, and that he had never seen anyone take shortcuts across it. *Id.* at 142a-43a. Also at the November 18, 2021 deposition, Mr. Haas testified that he never believed the depression in the ground to pose a threat to anyone, because "we have the pavement area up above" for walking between the parking lots, rather than the grassy area. *Id.* at 148a. Finally, the Airport Authority offered into evidence surveillance camera footage of the January 20, 2020 incident. *Id.* at 112a.

The Airport Authority filed its Motion on January 3, 2022. *See id.* at 39a-45a. Therein, it maintained that the Hinermans cannot "make out any claim of negligence . . . as a matter of law," because the injury occurred as Mrs. Hinerman was taking a shortcut on "grassy, unimproved, snow-covered" land. *Id.* at 42a. The Airport Authority cited numerous cases in which courts have ruled against plaintiffs who were similarly injured after voluntarily taking shortcuts on land not intended for pedestrian travel. *Id.* at 42a-44a.

4

The Trial Court held a hearing on the Motion on March 23, 2022. *Id.* at 294a. At the hearing, the Hinermans argued that the cases cited by the Airport Authority are inapposite because they concern instances where pedestrians were injured after purposely leaving a paved sidewalk. *Id.* at 301a. Mrs. Hinerman, they argued, could not have recognized that she had made a similar detour because the lawn and the parking lot appeared under the snow to form a flat, uninterrupted surface. *Id.* at 302a. The depressed area, according to the Hinermans, constituted "a substantial defect on this premises that the [Airport Authority] should have been aware of and should have protected business invitees from." *Id.*

On June 15, 2022, the Trial Court granted the Motion. *See id.* at 305a-18a. The Trial Court explained that as a matter of law, the Airport Authority "owed no duty relative to conditions that may have existed in an unimproved shortcut that [the Hinermans] elected to take." *Id.* at 317a. The Trial Court cited *Gilligan v. Villanova University*, 584 A.2d 1005, 1008 (Pa. Super. 1991), in which the Superior Court held that a landowner owed no duty to a business invitee "where the record showed the existence of a roadway adjacent to the place where [the plaintiff] fell and [the plaintiff] offered no evidence that the sidewalk or the roadway [was] improperly maintained or inadequate." R.R. at 317a. The Trial Court noted that in their deposition testimony, both Mr. and Mrs. Hinerman acknowledged that they were aware of a paved, cleared walkway to the parking lot, but traversed the snow-covered grassy area simply because it was a shorter distance to the car. *Id.* at 318a. The Trial

Court ultimately concluded that the Hinermans had "failed to state a cause of action in negligence." *Id.* at 318 (citing *Gilligan*, 584 A.2d at 1008). This appeal followed.[1]

## II. Issues

On appeal, the Hinermans argue that the Trial Court abused its discretion by "usurping the role of the jury to decide" the genuine issue of fact as to whether the hazardous condition and resulting risk of harm was known to Mrs. Hinerman. Hinermans' Br. at 4. The Hinermans also maintain that the Trial Court erred as a matter of law in concluding that the Airport Authority had no duty to protect Mrs. Hinerman, a business invitee, from dangerous conditions on its property.

## III. Discussion

It is settled Pennsylvania law that landowners are liable to business invitees for defective conditions only if they:

> (a) know or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to invitees;
> (b) should expect that business invitees will not discover or realize the danger, or will fail to protect themselves against it; and
> (c) fail to exercise reasonable care to protect them against the danger.

*Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (citing Restatement (Second) of Torts (2nd Restatement) § 343). Conversely, a landowner is *not* liable for physical harm to invitees caused by "any activity or condition on the land whose danger is

---

[1] Our standard of review on appeal from the grant or denial of summary judgment is *de novo*, and our scope of review is plenary. *Clean Air Council v. Sunoco Pipeline L.P.*, 185 A.3d 478, 485 (Pa. Cmwlth. 2018). Our review is limited to determining whether the trial court committed an error of law or abuse of discretion. *Id.* A court shall enter summary judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (citing Pa.R.Civ.P. 1035.2(1)).

known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* (citing 2nd Restatement § 343A). A danger is *known* if it is "recognized that it is dangerous," and *obvious* if "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." *Id.* at 123-24 (citing 2nd Restatement § 343A cmt. b).

Instantly, the Hinermans argue that the depression in the ground where Mrs. Hinerman fell was not obvious and that the Airport Authority had a duty to protect business invitees such as Mrs. Hinerman from that danger. The Hinermans maintain that, while the hazard was concealed by snow on the morning of Mrs. Hinerman's fall, it was prominent enough in clearer weather that the Airport Authority knew or should have known of the danger and should have either repaired the defect or installed signs warning individuals of the dangers of traversing grassy areas. Furthermore, the Hinermans dispute the proposition that "snow and ice, located on a grassy area, constitutes an open and obvious risk of harm to individuals." Hinermans' Br. at 17. Rather, they argue that Mrs. Hinerman's injuries were the "result of a dangerous *condition on the premises* that was concealed by snow and which the [Airport Authority] should have known of and could have repaired." *Id.* (emphasis in original). The Hinermans contend that because reasonable minds may still differ as to whether the danger was obvious, a genuine issue of material fact remains in this case.

In granting summary judgment, the Trial Court relied primarily on the Superior Court's decision in *Gilligan*. In that case, the plaintiff was walking across the university's land on a winter evening to attend a basketball game. 584 A.2d at 1006. The plaintiff reached a point on a sidewalk where the most direct route to the

7

basketball arena did not continue along the sidewalk but, rather, across a grassy area that the plaintiff described as snow-covered and uneven. *Id.* Rather than take the longer route along the sidewalk, the plaintiff opted to walk across the snow-covered grassy area, tripped on bumpy ground underneath the snow, and was injured. *Id.* Affirming the trial court's order of compulsory nonsuit, the Superior Court explained that the plaintiff "merely established that he voluntarily chose to walk upon an allegedly snow-covered grassy area, not intended to be traversed by pedestrians, and subsequently fell." *Id.* at 1008. Finding the facts in the instant matter substantially similar to those in *Gilligan*, the Trial Court concluded that the Hinermans had "failed to state a cause of action for negligence." R.R. at 318 (citing *Gilligan*, 584 A.2d at 1008).

Although *Gilligan* is not binding on this Court, we conclude that the Trial Court properly applied its holding in this case. Like the university in *Gilligan*, the Airport Authority maintained a pedestrian walkway in the midst of snowy conditions, which the Hinermans acknowledge had been cleared of snow. Like the plaintiff in *Gilligan*, the Hinermans elected to forego the walkway and walk instead across an unimproved area that had not been intended for pedestrian use. As in *Gilligan*, it was the *snow itself*, due to its inherent tendency to cover uneven patches of ground or other tripping hazards, which constituted the open and obvious danger. By walking onto an area not intended for their use for the sole purpose of taking a shortcut, the Hinermans accepted the risk that the underlying ground would be less than optimally suitable for walking upon. *See Carrender*, 469 A.2d at 125 (explaining that, by "*voluntarily proceeding to encounter a known or obvious danger*, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself") (emphasis added).

8

The Hinermans contend that *Gilligan* is inapposite for three reasons. First, the uneven ground that caused Mrs. Hinerman's injury was a hazardous condition that "existed for an extended period of time and could have been repaired." Hinermans' Br. at 18. Second, unlike the plaintiff in *Gilligan*, Mrs. Hinerman was unfamiliar with the Airport Authority's premises and therefore reliant on warning signs or fences to protect her from any defects. Third, unlike the *Gilligan* plaintiff (who testified that the snow-covered ground before him appeared uneven), Mrs. Hinerman testified that the grassy area between the parking lots "appeared perfectly level." *Id.* at 19. Thus, the Hinermans claim that Mrs. Hinerman "could not have appreciated the risk of harm posed to her by crossing this section of the premises." *Id.*

We conclude that the Hinermans' attempts to distinguish *Gilligan* are unavailing. First, the fact that the depression in the ground had existed for "an extended period of time" is irrelevant. By their very nature, unimproved areas of land contain defects that may result in tripping or falling when being crossed on foot. The Airport Authority fulfilled its duty to protect Mrs. Hinerman and other business invitees from those defects by creating a paved walkway and by clearing that walkway of snow on the morning of the Hinermans' visit. Next, Mrs. Hinerman's lack of experience with the Airport Authority's premises is immaterial. A business invitee does not need to be intimately familiar with a property in order to recognize the danger that snow cover conceals underlying bumps, depressions, or other hazards. Thus, it does not matter whether Mrs. Hinerman perceived the ground to be smooth or bumpy, since the uncertainties inherent in walking on snow-covered ground are obvious in either case. Had Mrs. Hinerman wished to avoid those

uncertainties, she could have and should have used the walkway that the Airport Authority provided and kept clear of snow to reach the outer parking lot.

While the question of whether a danger was known or obvious is usually a question for a jury, the question may be decided by the court if reasonable minds could not differ as to the conclusion. *Carrender*, 469 A.2d at 124. In this case, Mrs. Hinerman's testimony clearly established that she voluntarily departed from the area intended for her use in order to take a shortcut across snow-covered, unimproved land to her destination. Consequently, the Trial Court did not abuse its discretion in concluding that the Airport Authority breached no duty to the Hinermans.

Next, the Hinermans argue that the Trial Court applied a legally erroneous theory of landowner duty. In support, the Hinermans cite the Superior Court's observation in *Treadway v. Ebert Motor Co.*, 436 A.2d 994, 998 (Pa. Super. 1981), that landowners owe business invitees a duty "to inspect the premises and to discover dangerous conditions." In *Treadway*, a business invitee was injured when he slipped and fell on a snow-covered metal plate that had been installed to cover a worksite ditch, near the doorway to the landowner's building. *Id.* at 995. The trial court granted nonsuit, reasoning that the metal plate did not create an especially dangerous condition. *Id.* at 997. On appeal, the Superior Court reversed, holding that the trial court failed to consider evidence that the metal plate was in a position where visitors were required to walk on it while entering or exiting the building. *Id.* The precise location was important "because [the metal plate] was at a place which the defendant knew would be traveled by invitees." *Id.* at 999. The Hinermans argue that the Airport Authority had a similar duty to discover and remedy dangerous conditions and that its failure to do so was the proximate cause of Mrs. Hinerman's injuries.

Contrary to the Hinermans' arguments, *Treadway* does not stand for the proposition that landowners have a duty to remove *all* dangers from any part of their premises. In *Treadway*, the metal plate on which the plaintiff fell lay in the clear path of "ingress and egress" to and from the defendant's offices. 436 A.2d at 998. It was "impossible not to step on the plate when exiting from the door"; consequently, the risk of injury was increased "[s]imply by where the plate was located." *Id.* at 999. Here, by contrast, the depression in the ground over which Mrs. Hinerman tripped formed part of an unimproved area that was never intended for pedestrian use. Mr. Monzo and Mr. Haas both testified, and the Hinermans do not dispute, that pedestrians were never observed walking across the area where Mrs. Hinerman was injured. *See* R.R. at 142a-43a, 148a. Unlike the metal plate in *Treadway*, the depression in the ground where Mrs. Hinerman fell did not lie in a path foreseeably used for ingress and egress to or from any Airport building. Rather, it merely lay in the path of a shortcut that Mrs. Hinerman had elected to take instead of the walkway that had been created and maintained for her safe passage between the parking lots. Thus, *Treadway* does not support the conclusion that the Trial Court applied a legally erroneous definition of landowner duty to business invitees.[2]

---

[2] The Hinermans also argue that the Trial Court implicitly applied two legal theories that were inapplicable to this case. First, they maintain that, by concluding that the Airport Authority breached no duty to Mrs. Hinerman, the Trial Court appeared "to imply the application of the Assumption of Risk defense, which acts as a bar to recovery." Hinermans' Br. at 21. As an affirmative defense for which the defendant carries the burden of proof, assumption of the risk is a complete bar to recovery. *See Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1096 (Pa. 2012) (explaining that the Supreme Court "has unfailingly described assumption of the risk as an affirmative defense"). Contrary to the Hinermans' belief, there is no indication in the record that assumption of the risk played any role in the Trial Court's decision. Rather, the Trial Court simply concluded that the evidence failed to support a *prima facie* case of negligence.

**(Footnote continued on next page…)**

## IV. Conclusion

For the foregoing reasons, we affirm the Trial Court's Order.

_____
ELLEN CEISLER, Judge

---

Next, the Hinermans argue that the Trial Court's decision implies "that the theory of contributory negligence is controlling, which is not applicable to the case at hand." Hinermans' Br. at 24 (capitalization altered). Like assumption of the risk, contributory negligence is a complete bar to recovery. *Grim v. Betz*, 539 A.2d 1365, 1366 n.1 (Pa. Super. 1988). Again, there is no indication in the record that contributory negligence was an implicit factor in the Trial Court's decision.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Janet Hinerman and Richard      :
Hinerman,      :
              Appellants      :
     :
         v.      :    No. 732 C.D. 2022
     :
Westmoreland County Airport      :
Authority d/b/a Arnold Palmer      :
Regional Airport      :

## **O R D E R**

AND NOW, this 15th day of June, 2023, the Order of the Court of Common Pleas of Westmoreland County in the above-captioned matter, dated June 15, 2022, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge